No. 16,850.

BURKHARDT *v.* BANK OF AMERICA ET AL.
(256 P. [2d] 234)

Decided March 16, 1953. Rehearing denied April 20, 1953.

Messrs. PHELPS, WITTELSHOFER & CALKINS, Mr. ROBERT
L. GEE, for plaintiff in error.

Messrs. ROTHGERBER, APPEL & POWERS, Mr. IRA ROTH-
GERBER, JR., for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the
court.

THIS is an action on a guaranty for payment of rent.
Counsel for defendant in error say, "The only issue in
this case is the validity of this agreement, and whether
plaintiff in error is liable thereunder." Counsel for
plaintiff in error, to whom we will herein refer as de-
fendant, contend that the guaranty involved lacks con-
sideration; that it is a special guaranty and not general;
that being special, any rights thereunder did not descend
to the heirs of the guarantee. There are other questions
raised by defendant concerning this guaranty that are
not controlling within themselves; however, they are
involved in the consideration of the principal questions.
   C. J. Reavis and Margaret C. Reavis, as the owners
of premises known as 8660 Atlantic Boulevard, Los
Angeles county, California, on June 26, 1946, leased the
premises to the Pacific Supply Company, a limited part-
nership, of which C. C. Dawson was the sole general
partner. The lease was for a period of ten years, ending
November 30, 1955, for a total rental of $96,000.00, pay-

able at the rate of $800.00 per calendar month beginning December 1, 1945. $9,600.00 was paid at the time of the execution of the lease, and rental for the last twelve months of the term was to be one dollar per month.

On July 25, 1946, the Reavis' ownership was sold and conveyed to Maurice Horn, Jr. The lease provided that: "The lessee shall not let or underlet the whole or any part of said premises, nor sell or assign this lease, either voluntarily or by operation of law, nor allow said property to be occupied by anyone contrary to the terms hereof, without the written consent of the lessor." And it is further provided: "Lessee shall have the right to assign this lease to a corporation of which lessee has controlling interest, by sending to lessor a copy of the corporation minutes showing said assignment by registered mail."

On February 20, 1947, the Pacific Supply Company assigned said lease to the Dawson Manufacturing Corporation, of which C. C. Dawson was the controlling stockholder and Herman A. Burkhardt, defendant herein, was a shareholder and secretary. On July 12, 1948, nearly a year and a half after this last assignment, Dawson and Burkhardt entered into an agreement with Horn whereby the provision of the lease hereinbefore set out concerning the underletting of the premises without the written consent of the lessor was waived, and in consideration of this waiver by Horn, they — Dawson and Burkhardt — obligated themselves jointly and severally to pay to said Horn the rentals reserved in the lease as provided, and guaranteed the payment of the installments of rent and each of them by the Dawson Manufacturing Corporation should said Dawson Manufacturing Corporation fail so to do. "The obligations of this agreement shall be binding upon the said Herman A. Burkhardt and Clyde C. Dawson and their respective heirs, personal representatives and assigns." This agreement was signed by Burkhardt and Dawson and executed by the Dawson Manufacturing Corporation.

The premises were occupied by the Pacific Supply Company and the Dawson Manufacturing Corporation until November 1, 1949, and on that date became vacant and so remained until December 4, 1950, on which date, plaintiff bank leased the premises to Panacalite Pacific for $550.00 per month for a term beginning January 1, 1951 and expiring December 31, 1955. It is shown that no rentals were paid by the Dawson Manufacturing Corporation or Dawson after November 1, 1949 up to the date of the commencement of this action.

Horn died testate on August 13, 1948, and distribution of the assets of his estate has been made; plaintiff bank, defendant in error here, is the testamentary trustee under the will, and in that capacity, it filed this action to recover from Burkhardt, now of Denver, under the terms of the guaranty. The issues were tried to the court on the complaint and Burkhardt's answer, in which he admitted the execution of the lease and its assignment and the execution of the purported guaranty, but he alleged in that connection, that it was without consideration; denied that a claim had been stated by the complaint upon which relief could be granted; that the guaranty was wholly personal and could not pass to, or inure to the benefit of, the beneficiaries under the will; and defendant prayed for judgment in the sum of $9,600.00, the amount advanced at the time of the execution of the lease.

The judgment was for plaintiff in the sum of $10,-700.00 for unpaid rental from November 1, 1949 to January 1, 1951 (less a credit of $500.00); for $2,750.00 for deficiency rental of $250.00 per month from January 1, 1951 to and including November 1, 1951; and for $1,-002.50 for accrued interest. The court found that the $9,600.00 was paid for the last year's rental as a security therefor, but defendant was not yet entitled to a credit, counterclaim or offset as to the $9,600.00.

Defendant has followed his general contention con-

cerning the guaranty by specifying the points as shown to have been presented in the trial defense.

In our opinion, the controlling question is: Is the guaranty "special" or "general;" and if special, would a cause of action survive to the beneficiaries under Horn's will? If not, then plaintiff bank, as testamentary trustee, cannot maintain this action.

■ It is contended by defendant that the guaranty is without consideration, the guarantors having received nothing, because they already had exercised the other provision of the lease which permitted the lessee to assign to a corporation in which the lessee had a controlling interest. It is our opinion that there was present consideration, because the guarantors did receive a waiver of the general provision of the lease, which prevented them from making a general assignment to anyone.

At this point we note that there was no default by the Pacific Supply Company and the Dawson Manufacturing Corporation in the payment of the rentals provided for in the lease, on August 13, 1948, the date of Horn's death.

■ ■ There are various kinds of guaranties; however, they generally fall into one of two classifications, that is, "general" or "special." A "general" guaranty is such that it may be accepted by the public generally and according to its written terms, anyone to whom it is presented may enforce or comply with its terms and the liability of the guarantor attaches. A "special" guaranty is addressed to a particular person, who alone may have the benefits thereof and to whom the guarantor only is liable. If the guaranty here involved had been of contemporaneous execution with the lease, and the guaranty general in its terms, it could be assignable along with the principal obligation; however, in this instance the guaranty was of subsequent date, approximately two years after the date of the lease, and was entered into upon the special instance of one or the other of the

parties involved, and by its terms, was given for a consideration received from Horn, who in turn received the guaranty which was binding upon the heirs of the guarantors and not upon the heirs of the guarantee. The record discloses that this guaranty was prepared by Horn's attorney, and it is significant that it was not drawn so as to be binding upon the heirs and legal representatives of both parties, but only upon those of the guarantors. It also is disclosed that this attorney remarked that Horn desired the guaranty to run to him personally for his personal benefit. The manner in which this statement gets into the record is not entirely satisfactory, however, it is before us.

■ ■ One reading of the guaranty here involved would unmistakably disclose that it is clearly a "special" guaranty. "Where a guaranty, not connected with a negotiable instrument, is so drawn as to be personal and as to have force and effect only as to the person to whom it is given, that is, where it is a special guaranty, no person except the one specified can secure any advantage from the guaranty, and likewise it cannot be transferred or assigned to any other person, until after a right of action has arisen thereon, in which case such right of action may be assigned." 38 C.J.S., page 1190, section 42 (c). No right of action in this guaranty accrued prior to Horn's death on August 13, 1948, because it is shown that there was no default in the payment of rent until November 1, 1949. If a claim is not assignable it does not survive.

■ ■ The liability of the guarantor is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent. It has been said a guarantor is like a surety, a favorite of the law. There is no reason to construe the terms of the lease with those of the guaranty, which is of a later date, because in fact there is no conflict; therefore the guaranty is to be considered separate and apart from the lease, and when so considered, it must be strictly in accord with

the intent and terms thereof. That such is the rule in this jurisdiction is disclosed by many cases, the latest of which is *Yama v. Sigman*, 114 Colo. 323, 165 P. (2d) 191.

In view of the foregoing, we are clearly of the opinion that in this case, the unaccrued cause of action did not survive the death of the guarantee; therefore plaintiff bank, as testamentary trustee, cannot maintain it. Since this is the answer to the controlling question, it is unnecessary to discuss other interesting points presented.

Since we have determined that there is no liability of defendant under the guaranty on which plaintiff could maintain an action, we decline further discussion of this counterclaim, other than to say he cannot maintain it.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.

MR. JUSTICE KNAUSS not participating.