**ESSEX INTERNATIONAL, INC., a Michigan corporation, Plaintiff-Appellee,**

v.

**Earl A. CLAMAGE, Defendant-Appellant.**

**No. 18528.**

United States Court of Appeals, Seventh Circuit.

March 22, 1971.

---

4. This, in effect, was the Court's holding.

5. In *Kearney* the Court noted that the books which were preserved and produced "were substantially in compliance with the terms of the policy upon that subject." Thus the insurance company could

not prove it was prejudiced by virtue of the insured's non-compliance with the literal terms of the policy. Liverpool & London & Globe Insurance Company v. Kearney, 180 U.S. 132 at 135, 21 S.Ct. 326 at 327.

548

Morrie Much, Chicago, Ill., for defendant-appellant; Much & Shelist, Chicago, Ill., of counsel.

Samuel A. Haubold, Chicago, Ill., for plaintiff-appellee; Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, and KERNER and PELL, Circuit Judges.

SWYGERT, Chief Judge.

This diversity action[1] was brought by Essex International, Inc., against Earl

---

1. Clamage is an Illinois resident; Essex is a Michigan corporation which maintains its principal place of business in Fort Wayne, Indiana. Jurisdiction was based on 28 U.S.C. § 1332.

A. Clamage on a written guaranty which personally obligated Clamage to pay any overdue balance for materials ordered by Monarch Products Corporation from a predecessor of Essex.[2] Clamage appeals from an order entering summary judgment against him for $40,983.67, Monarch's current open account indebtedness to Essex. He raises only legal defenses to his liability and does not contend that there are any unresolved factual issues.

Essex is the successor corporation to greater Louisville Industries, Inc., having purchased Greater Louisville's assets in September 1967. Greater Louisville supplied Monarch with basic raw materials on open account from some time prior to 1963 until shortly before Monarch executed an assignment for the benefit of creditors in February 1969. By early 1963 Monarch's purchases of materials had resulted in a substantial open account balance owed to Greater Louisville. At that time, Charles and Paul Fetters, the owners and managers of Greater Louisville, requested that Clamage, the sole shareholder and chief executive officer of Monarch, personally guarantee that Monarch's open account indebtedness would be paid. Whatever his motivation,[3] Clamage agreed to this request; and on March 13, 1963 he executed a written guaranty which provided in part:

> In consideration of Greater Louisville Industries having extended credit for materials that have been sold to or hereafter may be sold to Monarch
>
> * * * I do hereby agree to personally guarantee and to pay on demand any sum or sums due or to become due Greater Louisville Industries, which remain unpaid after the due date thereof.

As we have noted, in September 1967, Essex purchased substantially all the assets of Greater Louisville pursuant to a corporate reorganization under section 368(a) (1) (C) of the Internal Revenue Code of 1954, 26 U.S.C. § 368(a) (1) (C). This change in corporate ownership had no substantial effect on the business operations of Greater Louisville. The Fetters continued to manage Greater Louisville as officers of Essex; and Clamage continued to deal personally with them and to address his orders to "Greater Louisville." Although Clamage concedes that the basic terms of the business relationship between the parties were not affected by the corporate reorganization, he attempts to avoid his obligation by relying on the rule that a special guaranty, addressed to a particular person or firm, is not enforceable by an assignee of that person or firm as to debts incurred after the date of the assignment. Clamage argues that under Illinois law[4] the guaranty's having been assigned to Essex as part of the sale of assets is sufficient in itself to discharge him.

The rationale for the rule that a special guaranty is not assignable without the consent of the guarantor

---

2. The complaint was actually in two counts: count I relying on the guaranty; count II relying on a promissory note which was drawn by Clamage to the order of a predecessor of Essex, Greater Louisville Industries, Inc., and which allegedly secured the same open account indebtedness covered by the guaranty. The district court, finding that material issues of fact relevant to count II remained unresolved, denied the parties' cross-motions for summary judgment on that count. Since we rule that the district court was correct in entering judgment on the written guaranty, we need not consider the issues raised concerning the promissory note.

3. Clamage's deposition testimony indicates that his willingness to sign the guaranty derived from his personal friendship with the Fetters and he characterizes the guaranty as a personal favor to enable a friend to obtain financing. The implication seems clear, however, that Greater Louisville's continuing willingness to extend credit to Monarch was in part attributable to Clamage's guaranty.

4. Clamage testified that he signed the guaranty at his office in Chicago. The district court assumed that Illinois law applied and Clamage has not argued that this assumption was erroneous.

stems from the general contract principle that a man may be held only to the precise obligation he undertook. Variation between the terms of the guarantor's undertaking and the dealings between the debtor and creditor-guarantee generally results in the discharge of the guarantor's obligation. Thus, in Lee v. Rubin, 117 So.2d 230 (Fla.Dist.Ct.App. 1960), where the plaintiff acquired a guaranty as part of an accounts receivable assignment pursuant to the dissolution of the creditor corporation, the Florida court affirmed a directed verdict in favor of the defendant-guarantor because the assignment from the creditor corporation was outside the terms of the guarantor's undertaking.

■■■ Illinois recognizes the general rule of nonassignability of guaranties. Second National Bank of Peoria v. Diefendorf, 90 Ill. 396, 407 (1878). However, the Illinois courts have refused to apply the rule mechanically; rather they examine the factual setting of each case to determine whether the policy underlying the rule is applicable. The result is that the guarantor is not discharged unless the "essentials of the original contract have * * * been changed and the performance required of the principal is * * * materially different from that first contemplated." Claude Southern Corporation v. Henry's Drive-In, Inc., 51 Ill.App.2d 289, 301–302, 201 N.E.2d 127, 133 (1964). An obvious example is presented where the only variation from the terms of the guaranty contract is a change in the name of the debtor corporation. Scovill Manufacturing Company v. Cassidy, 275 Ill. 462, 114 N.E. 181 (1916), held that such a change was *not* sufficient to release the guarantor in the absence of a showing that the underlying obligations of the parties had been materially altered. We think the same result would clearly be reached if the creditor corporation changed its name. *Cf.* Glassine Paper Company v. Shannon, 238 F.2d 765 (2d Cir. 1956), where the suit was not brought in the name of the person or firm to whom the guaranty was addressed.

■■ A potentially more substantial *variation from* the precise terms of a guaranty is presented when the creditor-guarantee named in the instrument is involved in a merger or consolidation under statute. In that event the surviving corporation takes over the rights and obligations of the merging corporations by operation of law. But a merger or consolidation involving the creditor corporation does not necessarily discharge a guarantor any more than a mere change in corporate name does. Unless there is some material change in the business dealings between the debtor and the creditor-guarantee and some increase in the risk undertaken by the guarantor, the obligation of the guarantor is not discharged. *See* Albers v. McNichols, 301 Ill.App. 551, 23 N.E.2d 220 (1939); Metro Corrugated Containers v. Owens-Illinois Glass Company, 185 F.Supp. 359 (E.D.N.Y.1960); cf. Pantex Pressing Machine, Inc. v. United States, 71 F.Supp. 859, 108 Ct.Cl. 735 (1947).

■ A more difficult problem is presented where, as here, the transfer of the guaranty results from a sale of a business' assets rather than from a merger or consolidation. In the sale of assets, the transfer does not result by operation of statute but by force of contract. The court in Albers v. McNichols, *supra*, indicated that this distinction between assignment by the act of the parties and succession by operation of law under the consolidation statute might be important. We agree that a simple assignment of a guaranty pursuant to a contract between a creditor-guarantee and a third party is more likely to cause a material alteration in the guarantor's obligation than an assignment pursuant to a merger; but *Claude Southern, supra,* teaches that in either case we must determine whether the guarantor's obligation has been materially altered. The manner in which an assignment takes place should not be determinative. The decision to effect a

consolidation of two businesses by way of a sale of assets rather than a statutory merger is ordinarily based on business and tax considerations which are irrelevant to the question whether a guaranty issued to one of the predecessor businesses should survive. Under *Claude Southern, supra,* the critical issue which must be determined in every case, regardless of the manner in which the assignment of the guaranty was effected, is whether the creditor-guarantee has attempted to impose on the guarantor an obligation which differs materially from that which he undertook to perform. If the undertaking of the guarantor is not materially altered by a transfer of the guarantee's assets, there is no reason to discharge him.

■ Applying the foregoing principles to the facts before us, we conclude that the purchase of Greater Louisville's assets by Essex in no way altered the obligation which Clamage had undertaken. Greater Louisville remained a distinct business entity after the sale and carried on its business in substantially the same manner. The Fetters remained in charge of Greater Louisville and Clamage continued to deal with them personally. In fact, Clamage even continued to use the name "Greater Louisville" in his purchase orders. Clamage was aware of the sale of Greater Louisville's assets shortly after it took place and he admits that he did not notice any change in Greater Louisville's business dealings with him.

■ In addition to his argument that the assignment of the guaranty terminated his obligation as a matter of law, Clamage argues that Essex did not rely on his guaranty and did not believe that it was enforceable after it was assigned. This contention is based on Essex's having requested Clamage to execute a new guaranty in its favor sometime in 1968. This request for additional security does not necessarily imply that Essex believed the existing guaranty was ineffective and had ceased to rely on it. In fact, Essex continued to extend credit to the financially failing Monarch Products Corporation even though Clamage did not execute an additional guaranty. We believe that Essex's request for further security is irrelevant to the issue of the enforceability of the guaranty after its assignment. Clamage's present attempt to repudiate his guaranty indicates that Essex was prudent in seeking additional security. However, Essex's unsuccessful efforts should not preclude it from enforcing an otherwise valid security it already possessed.

The judgment is affirmed.