695 P.2d 385

**SINCLAIR MARKETING, INC., a corporation, Plaintiff-Appellant,**

v.

**Larry A. SIEPERT and Fay Siepert, husband and wife; and Don L. Siepert and Neta Siepert, husband and wife, Defendants-Respondents.**

**No. 14959.**

Supreme Court of Idaho.

Jan. 30, 1985.

Gregory P. Meacham, of Petersen, Moss & Olsen, Idaho Falls, for defendants-respondents.

BAKES, Justice.

Appellant Sinclair sued to recover on defendants' personal guaranties given to secure payment on an open account to Little America Refining Company, which was allegedly assigned to Sinclair. The district court granted summary judgment to the individual defendants. We reverse and remand, holding that material issues of fact remain which preclude summary judgment.

Siepert's Distributing, Inc., is a closely held corporation whose principals [1] are Larry and Fay Siepert, husband and wife. On July 1, 1978, Siepert's Distributing began buying petroleum products from Little America Refining Company. The principals executed personal guaranties to assure payment on the open account with Little America. The guaranty contracts state:

> "This is a continuing and unconditional Guaranty and shall ... be binding upon the undersigned, the heirs, executors, administrators, successors and assigns of the undersigned, and shall inure to the benefit of, and be enforceable by you, your successors, transferees and assigns ...."

Siepert's picked up the products with their own tanker at a Pocatello pipeline terminal which is also used by other oil companies in supplying petroleum products.

In June of 1979, Mr. Bruggeman, vice-president and stockholder of Little America, told Larry Siepert that Sinclair Marketing, Inc., wanted to furnish petroleum products to Siepert's at the same price, terms and delivery point. Sinclair Marketing, Inc., is the "grandchild" corporation to Little America.[2] Larry Siepert agreed to

Robert M. Tyler, Jr., of Elam, Burke & Boyd, Boise, for plaintiff-appellant.

1. Don and Neta Siepert, husband and wife, are also parties to this appeal, having executed personal guaranties, but also having terminated their relationship with Siepert's Distributing, Inc., prior to this dispute arising.

2. Little America Refining Company and Sinclair Marketing, Inc., are related in the following manner: Little America Refining Company and Holdings Little America are two separate corporations having substantially the same stockholders; the two Little America entities acquired substantially all of the stock of Sinclair Oil Corporation in 1976; Sinclair Oil Corporation owns substantially all of the stock in Sinclair Marketing, Inc. Although Little America Refining Company and Sinclair Marketing, Inc., are separate and distinct entities, the marketing activities of both have overlapped since 1976. The

the change in suppliers, and Siepert's Distributing was issued a new charge plate from Sinclair Marketing to be used at the same Pocatello terminal. Siepert's Distributing was billed for subsequent purchases by Sinclair from Englewood, Colorado. All of the products purchased prior to the change were billed by and paid to Little America in Salt Lake City, Utah.

By 1982, Siepert's became seriously delinquent on the open account with Sinclair. On February 23, 1982, Sinclair's credit manager told Larry and Fay Siepert that unless new personal guaranties were executed the open account would be terminated. Larry and Fay Siepert did not execute the personal guaranty forms furnished by Sinclair, and the Siepert account was terminated.

Sinclair Marketing sued Siepert's Distributing, Inc., for the balance due on the open account. The individual Sieperts were also joined as defendants. Sinclair claims that all rights to enforce the personal guaranties previously given to Little America were assigned to Sinclair at the time Sinclair began supplying products. Both parties filed motions for summary judgment supported by affidavits. The district court granted partial summary judgment in favor of the individual defendants by ruling that the personal guaranties executed in favor of Little America could not be enforced by Sinclair.

The district court certified the partial summary judgment for appeal according to I.R.C.P. 54(b) but denied timely motions to alter or amend the judgment. At the same time, the district court also denied Sinclair's motion to amend the complaint which was made subsequent to the partial summary judgment. The proposed amended complaint included new theories of estoppel and piercing the corporate veil in an attempt to establish other bases for the personal liability of the individual Sieperts.

Sinclair has appealed the summary judgment and the denial of its motion to amend its complaint.[3]

I

■ We must first consider whether the guaranty contracts are assignable. The question of assignability depends largely upon principles developed under contract law. Generally, all contract rights which are not "personal" in nature may be assigned. Williston on Contracts (3d ed.) § 412. When extending an offer of guaranty, the guarantor has relied upon the specific circumstances and terms of the agreement between the debtor and the creditor, and their respective financial positions. On this basis the law has generally held that a guaranty contract with a specific creditor is "personal" to that creditor and may not be assigned. A guarantor "has been held to be a favorite of the law and his liability is not extended by implication beyond the express limits or terms of the instrument, or its plain intent." *Industrial Investment Corp. v. Rocca*, 100 Idaho 228, 233, 596 P.2d 100, 105 (1979). Contracts of guaranty have been described in two broad categories: (1) "special" guaranties which are addressed to a specific party; and (2) "general" guaranties which are addressed to the general public. *Burkhardt v. Bank of America Natl. Trust & Savings Assn.*, 127 Colo. 251, 256 P.2d 234 (1953). The rule of law has been simplistically stated that "a special guaranty is not assignable while a general guaranty may be assigned or transferred." 38 Am.Jur.2d Guaranty § 35, p. 1033 (1968). This statement seems to ignore the possibility that a guarantor may have freely contracted and intended the guaranty to be assigned within certain limits to a successor in interest, but yet not intended for the guaranty to be

---

two corporations have transferred some accounts between them and have shared some employees.

**3.** Sinclair has also moved this Court to augment the record on appeal with a deposition of Larry Siepert. The deposition was taken after the partial summary judgment. Larry Siepert was deposed in the capacity of vice-president of Siepert Distributing, Inc., pursuant to discovery in the remaining suit against Siepert Distributing, Inc.

enforced by others within the general public. The rule has been mechanically applied to summarily designate a guaranty as "special" and non-assignable without any discussion as to the language of the contract and/or intentions of the parties. *E.g., Kelly-Springfield Tire Co. v. Hamilton,* 230 Mo.App. 430, 91 S.W.2d 193 (1936) (enforcement of an assigned guaranty was barred even though contract stated it "shall inure to the benefit of the company [creditor], its successors and assigns"); *Lee v. Rubin,* 117 So.2d 230 (Fla.D.C.App.1960) (assignee of accounts receivable could not enforce a guaranty assigned with the accounts).

■ The case cited most often for the rule of non-assignability for special guaranties is *Burkhardt v. Bank of America Natl. Trust & Savings Assn.,* 127 Colo. 251, 256 P.2d 234 (1953). However, *Burkhardt* did not merely resolve the issue based upon the recitation of the rule against assignability. It went further and discussed the language of the contract and the circumstances surrounding the execution of the contract to determine that the guaranty was intended "to run to the [lessor-creditor] for his personal benefit," and was therefore non-assignable. The analysis in *Burkhardt* implied that under a different set of circumstances evidencing an intent by the parties to allow assignment, such an assignment would have been enforceable. We agree with the inference in *Burkhardt* that, even though a guaranty may be classified as special, the parties may have intended it to be assignable within certain limits. The guaranty in the present case contains some language contemplating assignment by Little America. "The generally applicable principle that the use in the agreement of the term 'assigns' indicates (without being conclusive), that the parties intended that the contract rights should be assignable is applicable to contracts of guarant[y]." *Targa Intl. Corp. v. Gross,* 112 Misc.2d 688, 447 N.Y. S.2d 384, 385 (1982). Therefore, we cannot say as a matter of law that the guaranty was non-assignable.

■ We next consider whether it can be enforced to collect debts which accrued subsequent to the assignment. There is no question that the assignment of a principal obligation also operates as an assignment of the guaranty of the obligation, and the guaranty is effective to collect this obligation which existed at the time of the assignment. *See* 38 Am.Jur.2d Guaranty § 36 (1968). However, in the present case the principal debt, Little America's account receivable, was not assigned to Sinclair. Siepert's Distributing fully satisfied the account receivable to Little America, and Sinclair is only seeking payment for credit extended subsequent to the alleged assignment. The case of *Kelly-Springfield Tire Co. v. Hamilton,* 230 Mo.App. 430, 91 S.W.2d 193 (Mo.App.1936), held that "[t]he assignment of the guaranty does not carry with it obligations of the performance of new and yet unexecuted obligations." *Id.* at 195. However, the more recent case of *Essex Intl., Inc. v. Clamage,* 440 F.2d 547 (7th Cir.1971), without specifically addressing the question, allowed a guaranty assigned as a part of an asset purchase to be enforced for new credit extended subsequent to the assignment so long as the guarantor was not materially injured or prejudiced by the assignment.

■ The guaranties in the present case state that they are "continuing and unconditional" guaranties in order to induce the extension of future credit on the sale of fungible petroleum products. Whether this contractual right could be assigned and enforced for credit extended subsequent to the assignment would be a factual question to be resolved based upon the intentions of the parties. Viewing the record most favorably to Sinclair, the non-moving party on the summary judgment being considered, the contractual language and affidavits support a legitimate inference that an assignee could enforce the guaranty for future credit. Therefore, we cannot say as a matter of law that these particular guaranties are non-assignable or non-enforceable for credit extended subsequent to the alleged assignment.

 We agree with the conclusion expressed in *Essex Intl., Inc. v. Clamage*, 440 F.2d 547 (1971), which held that the rules against assignment of a special guaranty should not be applied mechanically, but that courts should "examine the factual setting in each case to determine whether the policy underlying the rule is applicable." *Id.* at 550. The policy is that the agreement should not be extended to the detriment or increased risk to the guarantor. In *Essex*, the federal court in applying Illinois law considered several situations for the potential of increased risk or material change to the guarantor. The court concluded that a mere change in the name of the debtor or creditor should not affect the liability of the guarantor. The court further concluded that a merger or consolidation with the creditor should not affect the guarantor's liability unless there was a material change in the business dealings between the debtor and the new creditor. The particular factual situation faced by *Essex* was an assignment of a guaranty contract along with assets purchased from the original creditor. *Essex* finally concluded that the "purchase of [the creditor's] assets by Essex in no way altered the obligation which [the guarantor] had undertaken," and therefore the guarantor remained liable. 440 F.2d at 551.[4]

The facts of the present case go one step further than any of the situations we have considered above. Sinclair did not acquire the guaranty as part of a merger, consolidation, asset purchase, or accounts receivable assignment. Rather, Sinclair allegedly acquired the guaranty by assignment from Little America, Inc., as part of a mere change in suppliers for "administrative and convenience purposes" between two related corporations, Little America and Sinclair. The facts present an extremely close question and represent the outer edge of acceptable unilateral action on the part of the creditor without jeopardizing the enforceability of the guaranty contract.

In considering the present summary judgment granted to the defendants we must view the record and facts as alleged most favorably to Sinclair, the non-moving party. Little America and Sinclair were controlled and owned indirectly by the same shareholders. Some of the personnel which Siepert's dealt with were the same for both corporations. The individual Sieperts were aware of the relationship and consented to the change in suppliers. The same products were purchased from the new supplier, Sinclair, at the same location for the same prices. The individual Sieperts were the sole officers and shareholders of the debtor corporation. Upon these particular facts we cannot say that the alleged guaranty assignment was ineffective as a matter of law. The critical focus should be on whether the initial guaranty contract would allow for such an assignment and whether the alleged assignment resulted in an increased risk to the guarantor.

## II

 Having concluded that the individual Sieperts are not entitled to judgment as a matter of law, we now discuss the material issues of fact upon which liability of the guarantors will hinge. Sinclair alleged that early in the summer of 1979 the guaranty contracts were "assigned" from Little America to Sinclair. The assignment allegedly was accomplished by oral agreement between the vice president of Little America and the credit manager of Sinclair. The individual Sieperts allege that in February of 1982, Sinclair's credit manager told them that Sinclair did not have any personal guaranties from the individuals. Therefore, whether or not there was an

---

**4.** *Essex* further cited the case of *Lee v. Rubin*, 117 So.2d 230 (Fla.D.C.App.1960), without noting agreement or disagreement. *Lee* held that a guaranty acquired as part of an accounts receivable assignment was unenforceable. *Lee* seems to be a mechanical application of the rule without considering the underlying policy of increased risk to the guarantor. *Lee* also seems to be contrary to the general rule that an assignment of the principal debt, *i.e.*, account receivable, note, mortgage, carries with it the assignment of the guaranty as security. *See* 38 Am. Jur.2d Guaranty § 36 (1968), and cases cited therein.

actual assignment seems to be in dispute. If on remand the factfinder determines that no assignment actually took place, then Sinclair could not enforce the guaranties.

The language of the guaranty contracts do not conclusively provide for assignment or that the guaranty could be assigned without the underlying debt. Neither can we determine from the contract language whether the parties intended that the assigned guaranties could be enforced for new credit extended subsequent to the assignment. Sinclair argues that the contractual language stating that the guaranty contract shall "inure to the benefit of, and be enforceable by you [Little America], your successors, transferees and assigns" clearly and unambiguously allows for the alleged assignment. However, such an interpretation would allow Little America to assign or sell the guaranty contracts (without assigning the underlying debt) to anyone, regardless of the circumstances, terms, products purchased or prejudice resulting to the guarantors, hardly a result contemplated by the parties. Therefore we find as a matter of law that the contracts are ambiguous on the subject of assignability. The terms and conditions upon which the contracts allow for an assignment must be resolved based upon the intentions of the parties, which is a factual issue.[5]

If the factfinder determines that the contract allows for assignment, a third material issue is whether the assignment resulted in an increased risk or prejudice to the guarantor. The individual Sieperts alleged that the credit limit was controlled by each supplier and that credit extended by "Sinclair was approximately twice the highest amount ever owed to Little America." An increased credit limit after the assignment could be the basis for showing prejudice to the defendants. Sinclair's affidavits counter that the credit limits allowed to Siepert's Distributing were controlled by the

individual Sieperts. The factfinder must determine who controlled the credit limits since it would be difficult for the individual Sieperts to claim prejudice from an increase in credit limit under their own control. If the factfinder determines that Sinclair controlled the credit limit, then the factfinder must further determine whether the increase in the credit limit subsequent to the assignment exposed the individual Sieperts to increased risk.

To summarize, the affidavits and record frame the following material issues of fact which must be determined on remand: (1) whether Little America did in fact orally assign the personal guaranties to Sinclair as alleged; (2) whether the parties to the guaranty agreements intended that such an assignment could be effective; and (3) whether the positions of the individual Sieperts as guarantors were prejudiced or injured, through no control of their own, as a result of the assignment.

### III

■ The next issue presented on appeal is whether the trial court erred in refusing Sinclair's request to amend the complaint. The motion to amend was made concurrent with a timely motion to alter or amend the summary judgment. Under some circumstances, a party should not be allowed to amend the complaint after summary judgment has been granted. However, in the present case the summary judgment was merely a partial summary judgment which the defendants filed only 2½ months after the complaint was filed. The major claim of liability upon the underlying debt had not yet been adjudicated so that the substance of the original complaint was still pending. At the time of granting partial summary judgment, an answer had not yet been filed by the Sieperts. The rules specifically provide that "[a] party may amend his pleading once as a matter of course at

---

**5.** If the factfinder is unable to determine the intentions of the parties from the factual evidence, then the ambiguity should be resolved against the drafter of the contract as a last resort. *See* IDJI 615; Corbin on Contracts, § 559 (1960); Williston on Contracts, §§ 601, 621 (1961) (rule of construction against drafter is a secondary rule to be applied after an attempt to determine the intent of the parties).

any time before a responsive pleading is served ...." I.R.C.P. 15(a). Upon this record we hold that it was an abuse of the trial court's discretion to deny the motion to amend the complaint. On remand the district court should liberally allow for the amendment to the pleadings under I.R.C.P. 15(a).

## IV

■ The individual Sieperts have argued that the filing of this appeal was untimely. We find no merit in this argument. The time for filing appeal begins to run from the date of the filing stamp on the judgment, but "is terminated" by the filing of a timely post-judgment motion. Thereafter, "the appeal period ... commences to run upon the date of the clerk's filing stamp on the order deciding such motion." I.A.R. 14(a). The time before the post-judgment motion does not accumulate with the time after disposition. Rather, the time commences *anew* after the disposition of the timely post-judgment motion. *See First Security Bank v. Neibaur,* 98 Idaho 598, 570 P.2d 276 (1977). Since plaintiff filed its appeal within 42 days of the disposition of a timely post-judgment motion, the appeal was timely. Our disposition makes it unnecessary to rule on Sinclair's motion to augment the record.

Reversed and remanded for further proceedings. Costs to appellant. No attorney fees.

DONALDSON, C.J., SHEPARD and HUNTLEY, JJ., and OLIVER, J. Pro Tem., concur.