815 F.2d 965
 ST. LAWRENCE CEMENT, INC.; Independent Cement Corporation,
Plaintiffs- Appellees,
v.
John W. SPIVEY; R. Paul Smith, Defendants-Appellants.
ST. LAWRENCE CEMENT, INC.; Independent Cement Corporation,
Plaintiffs- Appellees,
v.
John W. SPIVEY; R. Paul Smith, Defendants,
v.
LONE STAR INDUSTRIES, INC.; Lone Star Cement, Inc., Party
in Interest- Appellants.
 Nos. 86-1622, 86-1625.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 6, 1987.
Decided April 3, 1987.
Rehearing Denied May 15, 1987.
 
 Warren Kadish Kaplan (Daniel M. Litt, Paul B. Bran, Melrod, Redman & Gartlan) Washington, D.C., Nevett Steele, Jr. (Gerson B. Mehlman, Kathleen M. Boucher, Whiteford, Taylor & Preston, Baltimore, Md., on brief), for defendants-appellants.
 William E. Donnelly (John M. Dowd, Thomas A. Rothwell, Jr., James M. Lyons, Alfred G. Scholle, C. William Reamer, Heron, Burchette, Ruckert, & Rothwell, Washington, D.C., on brief), for plaintiffs-appellees.
 Before PHILLIPS and ERVIN, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 These consolidated appeals turn on whether a guaranty with cognovit executed by appellants Spivey and Smith to appellants Lone Star Industries and Lone Star Cement, Inc. (Lone Star), was thereafter assigned by Lone Star to appellees St. Lawrence and Independent Cement Corp. (St. Lawrence). Asserting an assignment, St. Lawrence obtained entry of a judgment by confession on the cognovit against Spivey and Smith. Denying the assignment, Lone Star sought and was denied intervention.
 
 
 2
 We vacate the judgment by confession on the basis that the guaranty was not assigned to St. Lawrence. Since this obviates any need for intervention by Lone Star, we dismiss its appeal as moot.
 
 
 3
 * Spivey and Smith are the chief officers and co-owners of Washington Materials, a construction company that purchases cement from several sources, including Lone Star. On March 22, 1985, at the request of Lone Star, Spivey and Smith personally guaranteed the payment of debts then or thereafter owed by Washington Materials to Lone Star. The guaranty provided in pertinent part:
 
 
 4
 [T]he undersigned hereby jointly and severally guarantee and agree to pay to LONE STAR CEMENT, INC. its successors and assigns, ... all loans, drafts, overdrafts, accounts, checks, notes, interests, demands and liabilities, both direct and indirect, of every kind or description now or hereafter owing to [Lone Star] by WASHINGTON MATERIALS, INC., ... whenever the same, or any part thereof, shall become due and payable, or at any time thereafter upon demand of [Lone Star].
 
 
 5
 ....
 
 
 6
 This is a continuing guaranty and shall apply to indebtedness and liabilities of [Washington Materials] to [Lone Star], heretofore or hereafter incurred or created.... The undersigned hereby consent to suit and venue in the State of Maryland and authorize and empower any attorney in any court of record in the United States without prior notice of demand of payment to appear for them and confess judgment against them in favor of Lone Star Cement, Inc. or any other party then entitled to enforce this guaranty in any court having jurisdiction for the full amount then due hereunder, including court costs and attorney's fees of twenty percent (20%) of the amount then due hereunder.
 
 
 7
 On August 29, 1985, Lone Star, which owns sixteen cement plants and thirty-five terminals in the United States, sold its plant in Hagerstown, Maryland and its terminal in Baltimore, Maryland to St. Lawrence. The Bill of Sale and Assignment provided for the sale and transfer of the Hagerstown plant, its Baltimore terminal and terminal sub-lease, all equipment and inventories, and "all leases and other contracts relating to the Purchased Assets which are in force or outstanding at the Closing Date, including, without limitation, those which are listed in Schedules A and D to the [Asset Purchase Agreement]." The Asset Purchase Agreement (Agreement) contained identical language as well as additional language expressly providing that Lone Star was retaining all accounts receivable on deliveries made before the closing date. The guaranty was not among the contracts listed in Schedule A or D and was not discussed by the parties during negotiations.
 
 
 8
 Before the sale, Washington Materials purchased cement from Lone Star's Hagerstown plant. After the sale, Washington Materials and Lone Star continued to do business, although now the cement purchased by Washington Materials came from Lone Star's Roanoke and Richmond, Virginia facilities. Approximately one month after the sale, Washington Materials also began purchasing cement from Independent Cement, St. Lawrence's wholly-owned subsidiary, which was now operating the Hagerstown plant.
 
 
 9
 On January 22, 1986, a check issued by Washington Materials payable to Independent in the amount of $182,082.39 was returned for insufficient funds. Thereafter, on February 6, 1986, St. Lawrence filed this action seeking a judgment by confession against Spivey and Smith. St. Lawrence based its entitlement to judgment by confession on the guaranty and cognovit executed by Spivey and Smith in favor of Lone Star, which St. Lawrence claimed to have obtained in the August 29, 1985, purchase of the Hagerstown plant. After reviewing the complaint and supporting documents, a United States Magistrate of the United States District Court for the District of Maryland ordered the Clerk of the Court to enter a judgment by confession against Spivey and Smith.[1]
 
 
 10
 Thereafter, as provided by Local Rule 36, Spivey and Smith filed separate motions to vacate the judgment on the ground that St. Lawrence had no right to enforce the guaranty. These motions were supported by affidavits from Lone Star stating that the guaranty was not among the assets conveyed in the August 29, 1985, sale of the Hagerstown plant. The district court determined that the guaranty was a contract related to a purchased asset which was conveyed when the Hagerstown plant was sold to St. Lawrence and denied defendants' motions without a hearing in an order that also ratified and affirmed the judgment of the magistrate.
 
 
 11
 Following this denial, on May 6 and 13, 1986, Spivey and Smith filed separate motions to amend the findings, alter or amend judgment, grant relief from judgment, and grant a new trial. On May 5, 1986, Lone Star filed a motion to intervene. In a memorandum and order dated June 9, 1986, the district court repeated its finding that the guaranty had been assigned to St. Lawrence, denied the parties' request for oral argument, and denied the motions. This appeal followed.
 
 II
 
 12
 The dispositive issue is narrowly whether the Asset Purchase Agreement reveals an intention to assign the guaranty to St. Lawrence.[2] A contract must receive a reasonable construction consistent with the intention of the parties at the time they executed the contract. The language of a contract provides the best means of discerning the intent of the parties. Therefore, if the terms of the contract are clear and unambiguous, the intention expressed thereby controls its interpretation. General Motors Acceptance Corp. v. Daniels, 303 Md. 254, 492 A.2d 1306 (1985).
 
 
 13
 An examination of the language of the Asset Purchase Agreement, however, does not clearly reveal an intention either to include the guaranty in or exclude it from the set of contracts assigned by the Agreement. Under the Agreement, Lone Star agreed to assign to St. Lawrence "all leases and other contracts relating to the Purchased Assets which [were] in force or outstanding at the Closing Date, including, without limitation, those which are listed in Schedules A and D." The guaranty is not among the contracts listed in Schedules A and D, which would suggest that the guaranty was not assigned. The Agreement recognizes, however, that all of the assigned contracts may not be listed. The question then is whether the guaranty relates to a "Purchased Asset." Under the Agreement
 
 
 14
 "Purchased Assets" means all of the assets to be transferred from [Lone Star to St. Lawrence] pursuant to this Agreement including the Hagerstown Plant, the Baltimore Terminal, the Terminal Sublease, the Equipment, the Inventories, all assignable permits, license, authorizations and bonds, all tangible property and certain executory contracts related thereto.
 
 
 15
 Although the guaranty conceivably relates to Purchased Assets as defined by the Agreement, the language of the Agreement does not answer this question with any certainty. Further, the Agreement expressly provides that accounts receivable, the payment of which the guaranty was designed to insure, were not being conveyed: "[Lone Star] shall retain the accounts receivable relating to sales of [Lone Star's] products from the Hagerstown plant or Baltimore terminal as to products delivered through the next day preceding the Closing Date." It is impossible to determine, therefore, from the language of the Asset Purchase Agreement as a whole, whether the parties intended to assign the guaranty.
 
 
 16
 To resolve the uncertainty created by the language of the Agreement it is necessary to consider the circumstances surrounding the execution of the Agreement, including the language of the guaranty itself. Insel v. Solomon, 63 Md.App. 384, 492 A.2d 963 (1985). The proper interpretation of an ambiguous contract is generally a question of fact for the jury. Ordinarily, therefore, it would be appropriate to remand this case to the district court for findings of fact derived from an examination of the extrinsic evidence. A remand is not necessary on the facts of this case, however, because the circumstances surrounding the execution of the Agreement and the language of the guaranty satisfy us that reasonable minds could only conclude that the parties did not intend that the guaranty was included in the assets assigned to St. Lawrence.
 
 
 17
 The language of the guaranty obligates Spivey and Smith to guarantee the payment of all debts owing by Washington Materials to Lone Star. Nothing in the language of the guaranty specifically links it or limits it to purchases made from the Hagerstown plant, even though Washington Materials had made substantial purchases from the Hagerstown plant. Smith and Spivey, therefore, were obligated to guarantee Washington Materials' debts to Lone Star no matter which of Lone Star's sixteen plants supplied the cement. The only basis for linking the guaranty to the Hagerstown plant is that at the time the sale to St. Lawrence was closed the Hagerstown plant held accounts receivable from Washington Materials that were covered by the guaranty. These accounts receivable, however, remained the property of Lone Star. Thus no asset that could have linked the guaranty to the Hagerstown plant was conveyed to St. Lawrence. Moreover, Lone Star remained a going concern that continued to do business with Washington Materials after the sale of the Hagerstown plant. It is clear, therefore, that the guaranty was designed to protect an ongoing business relationship between Lone Star and Washington Materials, not merely a relationship between Washington Materials and the Hagerstown plant. Additionally, although the failure to list the guaranty in Schedule A or D of the Agreement is not dispositive of whether the guaranty was conveyed, its absence from these schedules bolsters our conclusion.
 
 
 18
 We conclude from these facts that as a matter of law St. Lawrence did not acquire the guaranty when it purchased the Hagerstown plant. Thus St. Lawrence and Independent had no right to enforce its cognovit clause. The judgment by confession in their favor, therefore, must be reversed. In light of this disposition it is unnecessary to consider whether Lone Star's motion to intervene was properly denied as untimely; and we therefore dismiss its appeal as moot.
 
 
 19
 No. 86-1622: REVERSED; No. 86-1625: APPEAL DISMISSED AS MOOT.
 
 
 
 [1]
 Local Rule 36 of the United States District Court for the District of Maryland permits a party to seek judgment by confession by filing a complaint supported by the instrument containing the cognovit and an affidavit stating the circumstances surrounding the defendant's execution of the instrument. If it appears from the documents that the plaintiff has a meritorious claim and that the defendant knowingly and voluntarily waived right to notice and prejudgment hearing, the court may direct entry of judgment. Under the Rule, the defendant has thirty days after receiving notice of the judgment to show cause why the judgment should be vacated, opened, or modified. It was pursuant to such a motion that the dispositive issue respecting the assignment in this case was raised
 
 
 [2]
 A threshold question presented by these facts is whether the guaranty was assignable at all. Some courts have held that guaranty contracts addressed to a specific party are not assignable, even if they purport to be for the benefit of the obligee, its successors, and assigns. E.g., FinanceAmerica Private Brands, Inc. v. Harry E. Hall, Inc., 380 A.2d 1377 (Del.S.Ct.1977); Kelly-Springfield Tire Co. v. Hamilton, 230 Mo.App. 430, 91 S.W.2d 193 (1936). Other courts have held that the assignment of a guaranty contract is effective only to collect obligations existing at the time of the assignment, e.g., Mechanics' American National Bank v. Rowell, 182 S.W. 989 (Mo.1916), or that whether a guaranty can be enforced to collect debts accrued after the assignment is a question of fact to be resolved by reference to the intent of the parties, e.g., Sinclair Marketing, Inc. v. Siepert, 107 Idaho 1000, 695 P.2d 385 (1985). Yet other courts have held that whether a guaranty is assignable turns on an examination of whether the undertaking of the guarantor is materially altered by the assignment. E.g., Essex International, Inc. v. Clamage, 440 F.2d 547 (7th Cir.1971). As this diverse authority indicates, it is not clear that the guaranty at issue here is assignable. This issue, however, was not considered by the district court or briefed by the parties. Because we hold that the Asset Purchase Agreement does not purport to assign the guaranty, it is not necessary for us to resolve this question