LaValley Bldg. Supply, Inc. v. Wallingford Plumbing & Heating, Inc., No. 187-3-11 Rdcv (Teachout, J., Oct. 13, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                    **CIVIL DIVISION**
**Rutland Unit**                                       **Docket No. 187-3-11 Rdcv**


**LAVALLEY BLDG. SUPPLY, INC.**,
     Plaintiff

v.

**WALLINGFORD PLUMBING & HEATING, INC.**, et al.
     Defendants


### DECISION
### DEFENDANTS' MOTION TO DISMISS, filed July 14, 2011


This matter is before the court on the Motion to Dismiss filed on July 14, 2011, by Defendant Margaret Brown. Ms. Brown is represented by Christopher P. Sullivan, Esq. Plaintiff LaValley Building Supply, Inc. ("LaValley") is represented by Ilerdon S. Mayer, Esq.


### Background

LaValley's Complaint alleges two theories of liability against Ms. Brown: breach of contract and unjust enrichment. The breach of contract theory arises from a commercial credit agreement between Mintzer Brothers, Inc. and Defendant Wallingford Plumbing & Heating, Inc. ("Wallingford Plumbing"), signed in 1991. As part of this agreement, Ms. Brown, along with her since-deceased husband, signed a personal guaranty. She agreed to "individually … guarantee the prompt payment to Mintzer Brothers, Inc., of all sums now or at any time hereafter due" from Wallingford Plumbing. The contract is silent as to whether the personal guaranty is assignable. The contract is also silent as to the duration of the personal guaranty.

At the time of the agreement, Ms. Brown's husband was the principal owner of Wallingford Plumbing. He died in 1994. The Browns' two sons then took over the business until 1996 when one of Mr. Brown's brothers became the principal owner.

In 2001, LaValley acquired Mintzer Brothers. In 2009, Wallingford Plumbing obtained building supplies from LaValley on credit. Wallingford Plumbing has not repaid

LaValley for these supplies, prompting LaValley to file this Complaint seeking to enforce Ms. Brown's personal guaranty.

## Analysis

Ms. Brown moves to dismiss both the breach of contract count and the unjust enrichment count. The question presented by the breach of contract count, whether Ms. Brown's personal guaranty was assignable, touches upon an unsettled area of the law, which it is worth exploring in some detail.

### Vermont Case Law

The issue turns on whether Ms. Brown's personal guaranty was assignable and can, therefore, be enforced by LaValley, Mintzer Brothers' successor in interest. Ms. Brown's guaranty specifically named Mintzer Brothers as the obligee. This makes it what is known as a "special guaranty." There is a split in authority as to whether special guaranties are assignable. No Vermont court has directly addressed this question.

The leading recent Vermont Supreme Court decision addressing personal guaranties is *O'Brien Bros's P'ship, LLP v. Plociennek*, 2007 VT 105, 182 Vt. 409. *O'Brien* is helpful because it lays out the background principles coloring the interpretation of personal guaranties. Guaranties are interpreted according to the standard contract rubric; if the guaranty is unambiguous as a matter of law, it will be given effect according to its terms. *Id.* at ¶ 9. Guaranties are strictly interpreted in favor of the guarantor. *Id.* at ¶ 11.

The facts of *O'Brien*, however, are not directly on point here. *O'Brien* concerned the renewal of a lease agreement originally secured by a personal guaranty. The guaranty stated that it applied as to the terms and conditions of a specified lease and was silent as to whether it applied to any extensions or modifications of that lease. *Id.* at ¶ 10. The Vermont Supreme Court held "that a guaranty for a specific term does not apply to extensions or renewals of the lease unless the continuing obligation of the guarantor is expressly stated either in the personal guaranty, the original lease, or the subsequent lease agreements." *Id.* at ¶ 12. The guaranty here is for a continuing extension of credit to Wallingford Plumbing by its supplier (first, Mintzer Brothers; then, LaValley). As the agreement is of an ongoing nature, there is no issue as to any extension.

General principles of assignability, derived from contract law, may also shade the interpretation of this guaranty. In determining whether a contract is assignable, the intention of the parties to the original transaction is the controlling factor. *Smith, Bell & Hauck, Inc. v. Cullins*, 123 Vt. 96, 100 (1962). This is determined by examining the entire contract. *Id.* The absence of words such as "heirs, successors, and assigns" in the contract is not controlling but is relevant. *H.P. Hood & Sons v. Heins*, 124 Vt. 331, 339

2

(1964). The assignability of agreements for an unlimited duration is disfavored so as to avoid projecting "the obligation through successive assignments into perpetuity." *Id*. Contractual obligations that are "inherently personal" to the contracting parties are generally not assignable. *Smith, Bell & Hauck, Inc.*, 123 Vt. at 101-02.

**Out-of-State Case Law**

Here, Ms. Brown gave a personal guaranty to Mintzer Brothers. Because Mintzer Brothers was a named party to be benefited by this guaranty, it is a "special guaranty." 38 Am Jur. 2d *Guaranty* § 14. A special guaranty may ordinarily only be enforced by the named party. *Id*. This case presents the thorny question of whether special guaranties are assignable and enforceable by a corporate successor. In the words of the ALR author addressing this issue: "Whether a guaranty given to a corporation may be enforced by a successor to the corporation has resulted in conflicting decisions by the courts." Annotation, *Who May Enforce Guaranty*, 41 A.L.R. 2d 1213 (originally published in 1955); see also *Kraft Foodservice, Inc. v. Hardee*, 457 S.E.2d 596, 598 (N.C. 1995) ("State courts have split on the issue of whether a guaranty addressed to a corporation may be enforced by the corporation's successor.").

Common-Law Approach

Traditionally, special guaranties could not be assigned, absent some specific indication that the original parties intended the guaranty to be assignable. One example of this approach is the Wyoming Supreme Court's decision in *Flying J, Inc. v. Booth*, 773 P.2d 144 (Wyo. 1989). There, the court held that a personal guaranty was not enforceable by the original obligee's successor in interest, at least as to debts incurred after the assignment. *Id*. at 148. The Booths signed a personal guaranty on behalf of a corporation that operated a truck stop in order to allow for an extension of credit from Husky Oil Co. to be used for the purchase of fuel and other supplies. *Id*. at 145. Husky Oil supplied the truck stop under this agreement for almost ten years before Husky was acquired by Flying J. *Id*. at 146. Credit continued to be extended after the assignment of the guaranty to Flying J. *Id*. Ultimately, the corporation operating the truck stop defaulted, and Flying J looked to enforce the guaranty against the Booths. *Id*.

The Wyoming Supreme Court applied what it called "the common law rule" in finding Husky's assignment of the Booths' special guaranty in favor of Husky to be invalid. *Id*. at 147. It held that "when a written instrument names only a specific creditor, there is no demonstration of an intent to make the instrument enforceable by someone not named within it." *Id*. The court concluded that contracts involving creditors, debtors, and guarantors are inherently "personal," and thus not assignable, because the guarantor will have relied on the "circumstances and terms of the agreement between the debtor and the creditor" as well as "their respective financial positions" in making the guaranty. *Id*. For this reason, the court concluded that guaranties are generally not enforceable by the successor in interest of the original obligee for debts incurred after the assignment even if the business relationship continues as before. *Id*. at 148.

3

<u>Pre-Assignment Debt vs. Post-Assignment Debt Approach</u>

This final piece of the *Flying J* court's reasoning, concerning the difference between credit extended before an assignment and credit extended after an assignment, is supported by *New Holland, Inc. v. Trunk*, 579 So. 2d 215 (Fla. Dist. Ct. App. 1991). The *New Holland* court noted that under the common law "a special guaranty is generally not assignable because extending credit constitutes the exercise of discretion and a guaranty agreement naming a particular creditor as promisee implies special trust and confidence placed by the guarantor in the named creditor and the assignment of the guaranty to another prospective creditor materially alters the guarantor's undertaking." *Id*. at 217.

The court, after surveying various approaches to this issue, explicitly drew a contrast between debt that is outstanding at the time of an assignment and new extensions of credit after the assignment. *Id*. at 218. It concludes that an assignee should be able to stand in the original obligee's shoes and collect on debt that already existed at the time of the assignment. *Id*. Conversely, the guarantor should not be liable for any new extensions of credit made by the assignee. *Id*. This approach has the benefit of applying a bright line rule to the question of when an assignee may or may not enforce a special guaranty.

<u>Restatement Approach</u>

In opposition to the common-law approach, a modern trend is to allow a successor in interest such as LaValley to enforce a special guaranty made to its predecessor. The trend is evidenced by the approach taken in the Restatement (Third) of Suretyship and Guaranty. The Restatement begins from the position that guaranties are generally assignable. Restatement (Third) of Suretyship & Guaranty § 13; see also 38 Am Jur. 2d *Guaranty* § 23 ("As a general rule, a guarantee is assignable absent express language in the document to the contrary.") It then goes on to outline three situations where guaranties are not assignable:

> (a) the substitution of a right of the assignee for the right of the obligee would materially change the duty of the secondary obligor or materially increase the burden or risk imposed on it by its contract
>
> (b) the assignment is forbidden by statute or is otherwise ineffective as a matter of public policy; or
>
> (c) the assignment is validly precluded by the contract.

*Id*. Several state courts follow the Restatement approach. See, e.g., *B.S.G. Foods, Inc. v. Multifoods Distribution Grp., Inc.*, 54 S.W.3d 553, 559 (Ark. Ct. App. 2001); *Kraft Foodservice, Inc. v. Hardee*, 457 S.E.2d 596, 598 (N.C. 1995); *Niederer v. Ferreira*, 234 Cal. Rptr. 779, 788 (Ct. App. 1987). The Restatement contends that its view of guaranties as contractual obligations that may be freely assigned under modern contract law, subject only to the three exceptions noted above, is "the dominant view." Restatement (Third) of Suretyship & Guaranty § 13, comment a.

The North Carolina Supreme Court case *Kraft Foodservice, Inc. v. Hardee*, 457 S.E.2d 596, 598 (N.C. 1995) is a leading example of the Restatement approach. It succinctly articulates the advantages of this approach: it is "consistent with the common law of contracts, accommodates modern business practices, and fulfills the intent of parties to ordinary business agreements." *Id*. at 598-99.

The facts in *Kraft Foodservice* are quite similar to those in *Flying J*. *Kraft Foodservice* involved an open account on which Quick Fill, the operator of a convenience store, purchased provisions from a supplier. *Id*. at 597. Hardee executed a personal guaranty of the open account in favor of the supplier. *Id*. Approximately a year later, the supplier sold and assigned all of its assets to Kraft. *Id*. In the next several years, Kraft underwent a series of corporate reorganizations whereby the guaranty was ultimately assigned to Kraft Foodservice. *Id*. Meanwhile, Quick Fill continued to operate its business as before. *Id*. The corporate changes of the obligee did not affect Quick Fill's ability to buy supplies on the open account. *Id*. Quick Fill ultimately filed for bankruptcy while owning money to Kraft Foodservice on the open account. *Id*. Kraft Foodservice then sued Hardee on the personal guaranty. *Id*.

The North Carolina Supreme Court, reversing the Court of Appeals, concluded that the personal guaranty was enforceable by Kraft Foodservice against Hardee. *Id*. at 599. The court acknowledged that a guaranty executed on the basis of a personal confidence in the obligee is not assignable, but it determined that there was no evidence that Hardee executed the personal guaranty out of personal confidence in the original supplier. *Id*. Rather, it appeared the guaranty was executed simply as a means of gaining credit to allow for standard commercial transactions. *Id*. For this reason, the court concluded that Hardee was ultimately indifferent as to who would be Quick Fill's payee and, therefore, the special guaranty could be freely assigned like any other contract provision. *Id*.

Under an almost identical scenario, the Arkansas Court of Appeals adopted the reasoning from *Kraft Foodservice* and the Restatement. *B.S.G. Foods, Inc. v. Multifoods Distribution Grp., Inc.*, 54 S.W.3d 553 (Ark. Ct. App. 2001) also involved a personal guaranty of an open account whereby a supplier extended credit to a manufacturer. The guaranty was subsequently assigned to the supplier's successor. After the assignment, purchases on the open account continued until the manufacturer defaulted on its indebtedness. *Id*. at 556. The assignee then brought suit seeking to enforce the personal guaranty. *Id*.

The court ultimately concluded that the guaranty was properly assignable because the assignment did not materially alter the guarantor's obligation. *Id*. at 559. Again, the court concluded that under this scenario it was irrelevant to the guarantor who the payee was. *Id*. He executed his personal guaranty in exchange for an extension of credit on the open account, and this arrangement continued even after the assignment. *Id*. These facts did not show that the guaranty was executed based on the guarantor's personal confidence in the supplier. *Id*.

<u>Fact-Specific Approach</u>

The Idaho Supreme Court in *Sinclair Marketing., Inc. v. Siepert*, 695 P.2d 385 (Idaho 1985) followed another approach. Again, the case involved an assignment of a personal guaranty of an open account. *Id*. at 386. Once again, the supplier was replaced by another closely-related corporation who continued to extended credit to guarantors' closely-held corporation. *Id*. at 387. Once the account became seriously delinquent, the successor supplier brought suit claiming the personal guaranty had been assigned to it. *Id*.

The Idaho Supreme Court began by critiquing the traditional common law formulation that general guaranties may be assigned while special guaranties may not. *Id*. at 387-88. The court decided that the better approach is to examine the original parties' intent as to whether or not a special guaranty may be assigned. *Id*. at 388. The court denied the guarantor's motion for summary judgment because it concluded that the factual situation and the language of the guaranty, which included a reference to the obligee's "assigns," "support a legitimate inference that an assignee could enforce the guaranty for future credit." *Id*. The guarantors' awareness of and consent to the change in supplier as principals in the closely-held debtor corporation also supported the inference of assignability. *Id*. at 389.

The *Sinclair Marketing* court ultimately remanded the case back to the trial court to examine the factual issues. It stated that the trial court's "critical focus should be on whether the initial guaranty contract would allow for such an assignment and whether the alleged assignment resulted in an increased risk to the guarantor." *Id*. It gave the lower court guidance by articulating three factual questions that needed to be answered: 1) Did the original supplier actually assign the guaranty to the successor supplier?, 2) Did the original parties to the guaranty intend such an assignment to be effective, and 3) Was the position of the personal guarantors prejudiced or injured as result of the assignment? *Id*. at 390. *Sinclair Marketing*, therefore, demonstrates a very fact-specific approach to the question of the assignability of personal guaranties.

**Conclusion**

The cases discussed above illustrate the major approaches to this issue. To summarize, the traditional common-law approach treats all special guaranties as not assignable. This approach presumes that any extension of credit is necessarily based on "personal" factors and thus any assignment of a special guaranty will materially alter the guarantor's position. A variant on the common-law approach, meanwhile, would allow the assignee to enforce the guaranty as to debt incurred before the assignment but would not allow enforcement with regard to credit that was extended after the assignment. Both of these approaches would reach the same result in this case; LaValley only seeks to enforce the guaranty as to post-assignment credit. These approaches would hold the guaranty to be unenforceable in this scenario.

The more modern position adopted by the Restatement is to treat personal guaranties as presumptively assignable. If that approach were to be applied here, Ms. Brown would have to point to some sort of special circumstances in order to overcome the presumption. She argues that the change to a new creditor (LaValley) increased her risk under the contract. Courts applying the modern approach have tended to reject this argument under the theory that a payee is a payee and the obligation to make payment on the guaranty is not the kind of "personal" obligation that is unassignable under standard contract law.

A final approach is one heavily grounded in the factual circumstances of the assignment. Applying this approach here would certainly require the court to deny Ms. Brown's Motion to Dismiss because the necessary factual record has not yet been established to answer questions such as what the original parties intended when the executed this very brief guaranty agreement and whether the assignment from Minzler Brothers to LaValley prejudiced or injured Ms. Brown's interest.

The court is faced with the question of what approach to apply. Turning back to the Vermont case law provides some guidance. Although it is not directly on point, the *O'Brien* decision emphasizes that guaranties are to be strictly construed in favor of the guarantor. While this general principle is not necessarily dispositive, it bolsters Ms. Brown's argument. The very short form contract at issue here says nothing about whether anyone other than Mintzer Brothers can enforce the guaranty. There is no reference to assignment or to "heirs, successors, and assigns." Finally, the guaranty has no specified duration. Allowing its assignment would run the risk that Ms. Brown could continue to be liable into perpetuity.

Keeping these factors in mind, the court finds it sensible to apply the common-law approach in this case. In Vermont, business relationships, especially of the sort seen here between a contractor and its supplier, are necessarily personal. By signing the guaranty, Ms. Brown expressed her willingness to be liable to Mintzer Brothers in exchange for the extension of credit to Wallingford Plumbing. The contract gave no indication that she could be liable to another entity almost twenty years later. In this situation, the view of the *Flying J* and *New Holland* courts is well-reasoned; this type of a relationship between a small business, its creditor, and its owner-guarantor is inherently personal. Therefore, Ms. Brown's special guaranty to Mintzer Brothers was unassignable and cannot be enforced by LaValley.

Even if the court were to adopt the Restatement here, the assignment of Ms. Brown's special guaranty likely increased her risk under the contract, which is a circumstance that can render an assignment unenforceable. Ms. Brown and her husband, then owner of Wallingford Plumbing, signed the guaranty in 1991. After Mr. Brown's death, Wallingford Plumbing came under new ownership in 1996. The assignment of the guaranty occurred in 2001. This case is based on credit extended by LaValley to Wallingford Plumbing in 2009. Other than the continued corporate existence of Wallingford Plumbing, the relevant transaction, therefore, involved none of the original parties to the 1991 agreement. These changes demonstrate the drawbacks of continuing to

7

enforce Ms. Brown's special guaranty into perpetuity. As the parties to a credit agreement such as this one change, the risk of default necessarily changes. Because of this increased risk, Ms. Brown should not be held liable for LaValley's 2009 extension of credit. Ms. Brown's Motion to Dismiss is granted as to the breach of contract claim.

Finally, Ms. Brown also moves for dismissal of the unjust enrichment claim. As alleged in LaValley's Complaint, the unjust enrichment claim is based solely on Ms. Brown's nonpayment of the debt owed to LaValley by Wallingford Plumbing. Ms. Brown's only potential liability for this debt is by virtue of the special guaranty. As the court has determined that LaValley is not entitled to enforce the special guaranty, Ms. Brown is not liable for this debt and thus has not been unjustly enriched. Ms. Brown's Motion to Dismiss is also granted as to the unjust enrichment claim.

<u>ORDER</u>

For the foregoing reasons, Defendant's Motion to Dismiss is *granted*.

Dated at Rutland, Vermont this 12th day of October, 2011.

_____
Hon. Mary Miles Teachout
Superior Judge

8