**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45184**

| | |
|---|---|
| NORA A. MULBERRY, and TN PROPERTIES LLC, | ) ) ) |
| Plaintiffs-Respondents, | ) ) |
| v. | ) ) |
| BURNS CONCRETE, INC., and CANYON COVE DEVELOPMENT COMPANY, LLP, | ) ) ) |
| Defendants-Appellants. | ) ) ) |

**Blackfoot, September 2018 Term**

**Opinion Filed: February 21, 2019**

**Karel A. Lehrman, Clerk**

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins, District Judge.

District court judgment, vacated and remanded.

Parsons Behle & Latimer Boise, for appellant. Robert B. Burns argued.

Carey Romankiw, PLLC, Idaho Falls, for respondents. Donald F. Carey argued.

_____

BURDICK, Chief Justice.

Burns Concrete, Inc., and Canyon Cove Development Company, LLP, (Canyon Cove), appeal the Bonneville County district court's judgment in favor of Nora Mulberry and TN Properties, LLC, (collectively Mulberry) regarding the extinguishment of a right of first refusal (ROFR). In 1999, Nora and Theodore Mulberry sold a piece of real property (Purchased Property) to Canyon Cove and included a ROFR to a nearby, distinct parcel of real property (ROFR Property). Twelve days later, Canyon Cove conveyed its interest in both the Purchased Property and the ROFR to Burns Concrete and recorded the deed to the purchased property with the Bonneville County Recorder. In 2005, Nora Mulberry and her now deceased husband conveyed the ROFR Property to their wholly owned limited liability company, TN Properties, and subsequently recorded the deed with the Bonneville County Recorder. In 2016, Mulberry filed a complaint seeking declaratory judgment and subsequently a motion for partial summary judgment. The district court entered partial summary judgment in favor of Mulberry finding the

1

ROFR was personal to Mulberry and Canyon Cove, and it was subsequently extinguished when Canyon Cove assigned it to Burns Concrete. On reconsideration, the district court held that the ROFR was a servitude appurtenant to the Purchased Property, and reaffirmed it was extinguished by Canyon Cove's conveyance to Burns Concrete. Burns Concrete and Canyon Cove timely appealed, and we vacate and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 1999, the Mulberrys sold land to Canyon Cove under a Commercial Investment Real Estate Purchase and Sale Agreement (PSA). At closing on March 18, 1999, the parties executed an addendum to the PSA which clarified the PSA's terms. A ROFR for a second parcel of land owned by the Mulberrys, separate from that parcel sold to Canyon Cove, was executed at the same time. The ROFR provided:

1. For adequate consideration, Sellers hereby grant to the Buyer a right of first refusal to acquire the Sellers' undivided interest in and to the real property hereafter described on the same terms, conditions, and provisions as the Sellers might intend to sell and convey said interest to any third person hereafter.

2. Should the Sellers hereafter intend to sell in good faith and convey said premises they will first offer the same to the Buyer by a written notice containing all of the terms, conditions, and provisions by which they intend to sell in good faith the same to said third person. Buyer shall then have five (5) days from the date such notice is received to accept or refuse said offer.

Approximately two weeks after closing, on March 30, 1999, Canyon Cove assigned the Purchased Property and its interest in the ROFR to Burns Concrete. In 2005, the Mulberrys conveyed the ROFR Property to TN Properties. Nora Mulberry is now the sole owner of TN Properties as Theodore Mulberry passed away sometime after the transfer.

In June 2016, Mulberry filed a verified complaint seeking declaratory judgment and later filed a motion for partial summary judgment on August 22, 2016. Mulberry sought a declaratory judgment that the ROFR was "personal to the parties" and not binding on Theodore and Nora Mulberry's "heirs, successors, devisees, or assigns, nor can it benefit Burns Concrete." On November 10, 2016, the district court entered a memorandum decision and order declaring the ROFR personal to the Mulberrys and Canyon Cove and finding that the ROFR was extinguished when Canyon Cove assigned it to Burns Concrete. The Memorandum Decision and Order also declared that the ROFR was not binding on the Mulberrys' heirs, successors, devisees, or assigns.

2

On December 30, 2016, Burns Concrete and Canyon Cove filed a motion for reconsideration. On March 20, 2017, the district court denied the motion. The district court stated that Canyon Cove's rights under the ROFR were extinguished because the ROFR was personal in nature, and because the ROFR was a servitude appurtenant to the Purchased Property and Canyon Cove no longer had an interest in the Purchased Property after conveying it to Burns Concrete.

On April 27, 2017, the district court dismissed the rest of Mulberry's claims as moot. In July 2017, the district court awarded Mulberry $11,447.50 in attorney fees and costs. Burns Concrete and Canyon Cove timely appealed.

## II.    ISSUES ON APPEAL

1. Did the district court properly determine the ROFR is personal to the parties and non-assignable?

2. Did the district court properly determine the ROFR was "extinguished" after the assignment from Canyon Cove to Burns Concrete?

3. Whether the district court properly awarded Mulberry attorney fees and whether either party is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

"When reviewing a grant of summary judgment, this Court employs the same standard as the district court." *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 182, 335 P.3d 25, 27 (2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011) (quoting *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)). "However, the nonmoving party cannot rely on mere speculation, and a scintilla of evidence is insufficient to create a genuine issue of material fact." *Intermountain Real Props., LLC v. Draw*, LLC, 155 Idaho 313, 316–17, 311 P.3d 734, 737–38 (2013) (quoting *Bollinger v. Fall River Rural Elec. Co-op., Inc.,* 152 Idaho 632, 637, 272 P.3d 1263, 1268 (2012)).

*Taylor v. Taylor*, 163 Idaho 910, 915–16, 422 P.3d 1116, 1121–22 (2018).

"[W]hen the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment. This means the Court reviews the district court's denial of a motion for reconsideration de novo." *Shea v. Kevic Corp.*, 156 Idaho 540, 545, 328 P.3d 520, 525 (2014) (quotations and citation omitted).

## IV.    ANALYSIS

**A.    The ROFR is personal to the parties, and thus, non-assignable.**

This case involves a ROFR and whether the ROFR was extinguished when Canyon Cove purported to assign the ROFR, as well as convey the Purchased Property, to Burns Concrete. The district court determined the ROFR was "plain and unambiguous. [The ROFR] does not make any reference to successors or assigns or give any indication that the ROFR was intended to be anything other than personal to the grantee." On reconsideration, the district court concluded that the ROFR was personal, but also held that it was an appurtenant servitude to the Purchased Property, and thus was extinguished when Canyon Cove assigned the ROFR and Purchased Property to Burns Concrete. For the reasons discussed below, the district court properly found the ROFR was personal to Canyon Cove, and thus non-assignable to Burns Concrete. However, Canyon Cove's assignment to Burns Concrete did not extinguish the ROFR as to Canyon Cove. Accordingly, the district court's determination that the ROFR was extinguished is vacated.

This Court has not yet decided when a ROFR is personal and non-assignable. However, this Court's cases dealing with ROFRs have generally applied contract principles.  We have said, "[a] preemptive right of first refusal is a legitimate contractual right." *Meridian Bowling Lanes, Inc. v. Meridian Athletic Ass'n, Inc.*, 105 Idaho 509, 511, 670 P.2d 1294, 1296 (1983); *see also Gyurkey v. Babler*, 103 Idaho 663, 671, 651 P.2d 928, 936 (1982) (applying contract rules regarding notice to a ROFR). As to assignability, this Court has held that "[g]enerally, all contract rights which are not 'personal' in nature may be assigned." *Sinclair Mktg., Inc. v. Siepert*, 107 Idaho 1000, 1002, 695 P.2d 385, 387 (1985) (quoting Williston on Contracts 3d ed. § 412). Thus, it follows that whether the ROFR was assignable depends on whether it was "personal" in nature. *See id.*

While this Court has not yet articulated when a ROFR is personal, secondary sources addressing ROFRs suggest that they are presumed to be personal absent clear language that they are assignable to successors or assigns.

> Rights of first refusal are presumed to be personal, and are thus not assignable unless either the clause granting the right refers to successors or assigns or the instrument clearly shows that the right was intended to be assignable. A right of first refusal to purchase real property is not assignable if the right does not run with the land but is personal to the grantee.

6A C.J.S. *Assignments* § 36.

4

Contracts that involve personal services, a special confidence, or the like, so as to make them nonassignable, include . . . the right of first refusal, unless the particular clause granting the right refers to successors or assigns or the instrument otherwise shows that the right was intended to be transferable or assignable.

6 Am. Jur. 2d *Assignments* § 28.

Thus, the applicable *Corpus Juris Secundum* and *American Jurisprudence* sections have stated that ROFRs are presumptively personal, absent language to the contrary such as language referencing "successors or assigns." 6 Am. Jur. 2d *Assignments* § 28. We applied similar reasoning in determining whether guaranties are assignable. In *Siepert*, this Court discussed whether or not a guaranty is assignable focuses on the "intent by the parties to allow assignment[.]" *Siepert*, 107 Idaho at 1003, 695 P.2d at 388. This Court reasoned that "the use in the agreement of the term 'assigns' indicates (without being conclusive), that the parties intended that the contract rights should be assignable[.]" *Id.* (citation omitted).

Additionally, the majority of case law addressing this issue holds that ROFRs are presumptively personal to the parties when the ROFR does not contain language such as "assigns" or "heirs." In support of this position, Mulberry cites to *Malone v. Flattery*, 2011 WL 444853 (Iowa Ct. App. 2011). The *Malone* Court found "the prevailing rule in this country is that [ROFRs] are not assignable unless the instrument indicates otherwise[.]" *Id*. at \*3. The *Malone* court also detailed policy reasons behind this presumption, noting "[ROFRs] operate as a restraint on alienation, but . . . do so in an undefined and indefinite way. Because their very indefiniteness can impede the marketability of real estate, it is logical to construe them narrowly." *Id*.

Additionally, in *Park Station L.P. v. Bosse*, the Maryland Court of Appeals offered a list of jurisdictions that support this presumption against assignability absent contrary language, stating,

> *See, e.g.*, *Roemhild v. Jones*, 239 F.2d 492, 495 (8th Cir. 1957) (The owner "could only offer the land for sale during his lifetime. . . . There is no language in the reservation stating that the [ROFR] runs to the heirs or assignees") . . . . *Fisher v. Fisher*, 500 N.E.2d 821, 822 (Mass. 1986) (The right of first refusal "was extinguished by [grantee's] death," as the clause granting the right did "not contain words such as heirs or assigns but speaks in personal terms"); *Kershner v. Hurlburt*, 277 S.W.2d 619, 623 (Mo. 1955) ("The instant contract, reasonably construed, does not violate the rule against perpetuities because the rights [of first refusal] conferred by it are personal to the holders thereof and terminated at their deaths."); *Nickels v. Cohn*, 764 S.W.2d 124, 132-33 (Mo. App. 1989) (Same).

835 A.2d 646, 655–56 (Md. 2003).

In this case, the district court properly determined the ROFR was personal to the parties and not assignable by Canyon Cove. As an initial matter, the ROFR contains no language contemplating heirs, successors, or assigns. This is unlike *Siepert*, where we held that an otherwise personal guaranty could be assignable if the ROFR contained language such as "assigns." *Siepert*, 107 Idaho at 1003, 695 P.2d at 388. Here, however, the ROFR only contemplates two parties: the Mulberrys and Canyon Cove. There is no language indicating the parties intended the ROFR to be assignable. While Burns Concrete and Canyon Cove cite to contract principles to support their theory that the ROFR was an assignable contract, they fail to articulate how the plain language of the ROFR contemplates assignability or how the ROFR demonstrates the parties intended it be assignable. *See Swanson v. Beco Const. Co.*, 145 Idaho 59, 63, 175 P.3d 748, 752 (2007) ("The intent of the parties is determined from the plain meaning of the words.") (citation omitted). And, as noted, the *Corpus Juris Secundum* and *American Jurisprudence*, as well as the case law of other jurisdictions, state that ROFRs are presumptively personal to the parties when the plain language does not contemplate assignability. Accordingly, the district court's determination that the ROFR was personal in nature is affirmed because the instrument did not include language stating it was assignable or binding on successors, heirs, or assigns.

Because we decide, based on the specific facts of this case, that the ROFR was personal to the parties, it obviates the need to address whether it was a servitude, as the ROFR, in this case, would not run with the land and therefore could not constitute a servitude. *See* Restatement (Third) of Prop.: Servitudes § 1.1 (2000) ("(1) A servitude is a legal device that creates a right or an obligation that runs with land or an interest in land. . . . (a) Running with land means that the right or obligation passes automatically to successive owners or occupiers.").

## B. The ROFR was not extinguished when Canyon Cove purported to assign it to Burns Concrete.

The final inquiry is whether the ROFR was extinguished after Canyon Cove attempted to assign it to Burns Concrete. The district court found: "The language of the ROFR in this case is plain and unambiguous. It does not make any reference to successors or assigns. . . . Consequently, the ROFR is presumed to be personal and non-assignable. Canyon Cove's assignment . . . extinguished the ROFR." On the motion for reconsideration, the district court stated that: "Because Canyon Cove no longer has an interest in the Purchased Property, and

Canyon Cove's interest in the ROFR was appurtenant to the Purchased Property and not held in gross Canyon Cove's rights under the ROFR have been extinguished." For the reasons discussed below, the district court erred in ruling that the ROFR was extinguished.

The Restatement (Second) of Contracts (1981) offers guidance on the issue of contractual rights, their assignment, and the potential outcomes of an improper conveyance. Under comment (a) to section 320, the Restatement provides: "Of course the assignment may be *ineffective* if it materially varies the obligor's duty . . . . (emphasis added). Similarly, "[t]he rules for promises and other terms of an agreement stated in Chapter 8 apply by analogy in determining whether an assignment is *inoperative* on grounds of public policy under paragraph (2)(b) of this Section." Restatement (Second) of Contracts § 317 cmt. e (1981) (emphasis added). Moreover, *Corpus Juris Secundum* offers additional insight into potential outcomes of assignments:

> Generally, an assignment is *valid* if it does not violate any statute, public policy, or constitutional provision, but it is *invalid* if it violates express or implied statutory prohibitions or is contrary to public policy. Statutory modifications may lend validity to an assignment that would be *void* against public policy at common law.

6A. C.J.S. *Assignments* § 70 (2018) (emphasis added). The foregoing sources acknowledge assignments can be "void," "invalid," "inoperative," or even "ineffective," but nothing indicates that the underlying contractual rights are "extinguished." Finally, the Restatement (Second) of Contracts Section 322(2) (1981) provides:

> A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, . . .
>
> (b) gives the obligor a right to damages for breach of the terms forbidding assignment *but does not render the assignment ineffective*;
>
> (c) is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition.

(emphasis added). In sum, nothing in these sources states that the underlying contractual rights can be extinguished.

In contrast to the foregoing secondary sources, there is but one source that offers extinguishment as a potential outcome of a ROFR's assignment. *American Jurisprudence, Second* states:

> The right of first refusal may be considered a personal contract, and as such, when a right of first refusal is conveyed simultaneously with a parcel, the subsequent assignment and exercise of the right of first refusal may be void as the

7

right of first refusal does not run with the land, but rather is personal to the grantee, and thus is extinguished when the property is conveyed.

6 Am. Jur.2D *Assignments* § 40 (2018) (note and footnotes omitted). However, this authority is unpersuasive. This section cites to a lone New York state case, *Sniezyk v. Stocker*, 729 N.Y.S.2d 264 (N.Y. Sup. 2001), which distinguished between a deed conveying property that contained language such as "assigns forever" and a ROFR that did not. *Id.* at 265. The Court stated, "the land was conveyed to [grantee] '*and* assigns forever.' The right of first refusal was conveyed to [grantee] alone. By its language, [the ROFR] did not run with the land, but rather was personal to her, and was extinguished when she conveyed the property to plaintiffs." *Id*. (emphasis added). *Snieyzk's* sole authority for extinguishment came from *Adler v. Simpson*, 610 N.Y.S.2d 351 (N.Y. App. Div. 1994). However, *Adler* does not speak to the status of a ROFR's contractual rights after an invalid assignment. Instead, *Adler* involved the question of whether a ROFR survived the death of a grantor. *Id.* That court stated, "the parties intended it to be a personal agreement . . . we find . . . that the first refusal agreement was personal to [grantor] and was extinguished upon his death." *Adler*, 610 N.Y.S.2d at 354.

As such, the single piece of authority that supports the extinguishment of a ROFR (6 Am. Jur. 2D *Assignments* § 40 (2018)) is not persuasive to this Court. Indeed, the district court thought as much by stating, on reconsideration, that Section 40's cautionary statement was "insufficient to conclude that a personal ROFR is extinguished upon its invalid assignment." Accordingly here, the district court erred in determining the ROFR was extinguished when Canyon Cove purported to assign it to Burns Concrete.

Next, we address the effect of the Mulberrys' conveyance of the ROFR Property to TN Properties as this occurred after Canyon Cove's purported assignment to Burns Concrete. According to the district court: "Although a right of first refusal may be personal to the grantee[,] [i]t is *not* personal to the grantor. 'A transfer of property by gift from one family member to another does not trigger a right of first refusal.'" (quoting 92 C.J.S. *Vendor and Purchaser* § 180.). The district court cited to *Isaacson v. First Security Bank of Utah*, 95 Idaho 452, 511 P.2d 269 (1973) when it looked at the nature of the conveyance between the Mulberrys and TN Properties. In *Isaacson*, the defendant bank (operating as trustee for "father") leased a parcel of land subject to a ROFR. *Id*. at 453, 511 P.2d at 270. Later, father "sold" the subject property to his son for $20,000 and the lessees sued for specific performance under the ROFR's terms. *Id.*

8

The trial court valued the property at $60–70,000 and as a result, father's sale was deemed a gift that did not implicate the ROFR's terms. *Id.* at 454, 511 P.2d at 271. On appeal, this Court held:

> It is undeniable that by the transaction between the father's trustee and the son, the property was effectively transferred to a new owner; but this does not mean that the property was 'placed beyond the lessees' reach,' as they submit**.** Had the donee desired to consummate a bona fide arm's length sale prior to [the end of his lease], he could not have done so without first offering the property to the lessees on the same terms he would have been willing to sell to anyone else. Until the lease was terminated, the donee landlord's right to sell the property was subject to the lessee's right of first refusal contained in the lease agreement. Therefore, the property was within the lessees' reach to the same extent that it always had been[,] but their right to purchase would ripen only in the event the lessor desired to sell during the term of the leasehold. We note, moreover, that the effect upon the lessees—i.e., a change in landlords—would have been the same if an unequivocal gift of the reversionary interest had taken place.

*Isaacson*, at 454–55, 511 P.2d at 271–72.

In this case, the district court stated that "[i]f the ROFR was still valid at the time the property was conveyed to TN Properties, TN Properties, as donee, would be held subject to the ROFR in the same way that the Mulberrys were." Based on the foregoing discussion, the district court's analysis was correct. The prayer for relief in Mulberry's complaint contained several theories upon which the ROFR was void including failure of consideration, equity, and that the ROFR is not binding if the property passes via inter vivos gift or intestate succession. Those claims were dismissed as moot upon the court's determination the ROFR was personal and subsequently extinguished. Because we hold that the ROFR was not extinguished, we remand for a determination of the other issues raised in the complaint. If on remand, the district court finds the ROFR is not void under any of the alternative theories Mulberry alleged in the complaint, then TN Properties will be subject to the ROFR in the same way that the Mulberrys were.

Lastly, we note that the judgment in this declaratory action does not legally describe the ROFR property. We have said that, "[a] judgment defining rights to land must be precise in its description." *Read v. Harvey*, 147 Idaho 364, 369, 209 P.3d 661, 666 (2009) (quoting *Standall v. Teater*, 96 Idaho 152, 157, 525 P.2d 347, 352 (1974)). We have likewise elaborated that, "a judgment defining rights to land must . . . contain a description sufficient to enable an officer charged with the duty of executing a writ of possession to go upon the ground, and, without exercising judicial functions, to ascertain the locality of the lines as fixed by the judgment." *Lisher v. Krasselt*, 94 Idaho 513, 517, 492 P.2d 52, 56 (1972). "An accurate metes and bounds

description is required for that purpose." *Id.* In this case, the district court is "defining rights to land" and therefore the judgment must contain an "accurate metes and bounds description[.]" *Id.* Accordingly, on remand, we direct the district court to attach the legal description of the ROFR property to the judgment.

**D.     Attorney Fees.**

The district court awarded attorney fees to Mulberry under Idaho Code section 12-120(3) and Idaho Rules of Civil Procedure 54(d)(1) and 54(e). The district court found Mulberry was the prevailing party because:

> This Court's declaration that the ROFR was extinguished and non-binding was in accordance with the relief sought by Plaintiffs. Although Plaintiffs' complaint was, upon Plaintiffs' motion, thereafter dismissed as moot, Defendants cannot be said to have prevailed in the matter. Plaintiffs, ultimately received the result they sought—a determination that the ROFR was not assignable. . . . The fact that Defendants now appeal that determination indicates Defendants did not achieve the outcome they desired. Plaintiffs are the prevailing party in this matter.

However, Mulberry is no longer the prevailing party because the district court erred in declaring the ROFR extinguished. *See Bushi v. Sage Health Care, PLLC*, 146 Idaho 764, 771, 203 P.3d 694, 701 (2009). Thus, we vacate the district court's award of attorney fees and remand for a determination of the prevailing party after the case has been decided.

On appeal, both parties request attorney fees pursuant to Rule 41 and Idaho Code section 12-120(3). Section 12-120(3) provides:

> (3) In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.
> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

The district court noted that both parties agreed this case revolved around a commercial transaction and authorized attorney fees to the prevailing party pursuant to Section 12-120(3). Additionally, Idaho Rule of Civil Procedure 54(e) provides that, "[i]n any civil action the court may award reasonable attorney fees . . . to the prevailing party . . . when provided for by any statute or contract." I.R.C.P. 54(e). However, "an award of attorney fees is improper at this

juncture," as it is not yet clear who the prevailing party will be. *See Bailey v. Peritus I Assets Mgmt., LLC*, 162 Idaho 458, 463, 398 P.3d 191, 196 (2017). On remand, there will still be issues to decide at the district court level. Once a final judgment is entered, we "direct the district court to determine which party has prevailed and whether the prevailing party is entitled to attorney fees related to this appeal." *Id.*; *See Wolford v. Montee*, 161 Idaho 432, 443, 387 P.3d 100, 111 (2016).

## V. CONCLUSION

We conclude that the ROFR is personal to the parties and the district court erred by ruling that the ROFR was extinguished after Canyon Cove purported to assign it to Burns Concrete. We remand for a determination of the other issues raised in the complaint that were previously dismissed as moot. The district court's award of attorney fees and costs to Mulberry is vacated.

Justices HORTON, STEGNER and NAFTZ, PRO TEM, **CONCUR.**

BRODY, Justice, specially concurring.

I agree with the Court's decision to vacate the district court's judgment and remand this case for further proceedings. I write separately to explain the basis for my conclusion.

The difference between my view and that articulated by the Court today stems from our interpretations of the district court's decisions. When the dust from the motion for summary judgment and motion for reconsideration settled, I understood the district court made four rulings:

1. The ROFR was personal to Canyon Cove.
2. The ROFR was a servitude burdening the ROFR Property which meant that it bound Mulberrys' successors.
3. The ROFR was appurtenant to the Purchased Property.
4. Canyon Cove's rights in the ROFR were extinguished when it transferred the Purchased Property to Burns Concrete.

The Court's decision, in contrast, concludes that the "district court properly determined the ROFR was personal to the parties . . . ." My reading is that the district court determined the ROFR was personal to one party—Canyon Cove—and that it was binding on the Mulberrys' successors.

From a practical perspective, this difference of interpretation impacts the district court rulings that must be addressed. I agree with the Court that the district court correctly ruled that the ROFR was personal to Canyon Cove. I have also concluded that there is no need to address

11

the thorny issue of whether the ROFR was a servitude burdening the ROFR Property because both parties agree that this issue has not been appealed. Once it assumed that the ROFR was a servitude burdening the ROFR Property, however, it becomes necessary to examine the issue of whether the servitude *burdening* the ROFR Property was also a corresponding *benefit* appurtenant to the Purchased Property. The Court does not address this issue because it stopped its analysis when it concluded the ROFR was personal to both parties.

The district court analyzed the servitude issue using the framework of the RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.6 (AM. LAW INST. 2000). While there has been some criticism of this Restatement, it is reasonable to use the approach here in a case where the parties do not challenge the district court's foundational ruling that the ROFR was a servitude burdening the ROFR Property based on Restatement principles.

To determine whether the district court erred when it determined that the ROFR was appurtenant to the Purchased Property, it is important to start with Section 1.5 of the Restatement which defines the terms "appurtenant," "in gross," and "personal" as follows:

> (1) "Appurtenant" means that the rights or obligations of a servitude are tied to ownership or occupancy of a particular unit or parcel of land. The right to enjoyment of an easement or profit, or to receive the performance of a covenant that can be held only by the owner or occupier of a particular unit or parcel, is an appurtenant benefit. A burden that obligates the owner or occupier of a particular unit or parcel in that person's capacity as owner or occupier is an appurtenant burden.
>
> (2) "In gross" means that the benefit or burden of a servitude is not tied to ownership or occupancy of a particular unit or parcel of land.
>
> (3) "Personal" means that a servitude benefit or burden is not transferable and does not run with the land. *Whether appurtenant or in gross, a servitude benefit or burden may be personal.*

*Id.* § 1.5 (emphasis added). Comment a to this section clarifies that while appurtenant benefits ordinarily run with land, they may be personal to a particular owner:

> Only appurtenant benefits and burdens run with land, but the terms are not synonymous. Running with land means that the benefit or burden passes automatically to successors; *appurtenant means that the benefit can be used only in conjunction with ownership or occupancy of a particular parcel of land*, or that only the owner or occupier of a particular parcel is liable for failure to perform a servitude obligation. *Appurtenant benefits and burdens ordinarily run with land, but they may be made personal to particular owners or occupiers of the land.*

12

*Id.* § 1.5 cmt. a (emphasis added). In other words, even though a ROFR may be personal to a party, the exercise of that right may be "tied to ownership or occupancy of a particular unit or parcel of land." The district court ruled that the ROFR was personal to Canyon Cove and that it was tied to Canyon Cove's ownership of the Purchased Property. For me, this is where the district court's analysis missed the mark.

Section 4.5 sets forth the criteria used to determine whether a servitude benefit is appurtenant, in gross, or personal. It states:

(1) Except where application of the rules stated in § 4.1 leads to a different result, the benefit of a servitude is:

(a) appurtenant to an interest in property if it serves a purpose that would be more useful to a successor to a property interest held by the original beneficiary of the servitude at the time the servitude was created than it would be to the original beneficiary after transfer of that interest to a successor;

(b) in gross if created in a person who held no property that benefited from the servitude, or if it serves a purpose that would be more useful to the original beneficiary than it would be to a successor to an interest in property held by the original beneficiary at the time the servitude was created;

(c) personal if not transferable under the rule stated in § 4.6(2).

(2) In cases of doubt, a benefit should be construed to be appurtenant rather than in gross.

*Id.* § 4.5. Section 4.1, which is referenced in the opening sentence of the foregoing provision, sets forth the foundational principle that a servitude should be interpreted to give effect to the intention of the parties as gleaned from the language of the instrument or the circumstances surrounding its creation:

A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.

*Id.* § 4.1. Reading Sections 4.1 and 4.5 together, unless the language of the instrument or the circumstances surrounding the creation of the ROFR would lead to a different result, the *benefit* of the ROFR is appurtenant to the Purchased Property if it serves a purpose that would be more

13

useful to Burns Concrete than to Canyon Cove. The record simply does not support this conclusion.

I agree with the district court that the language of the ROFR does not address whether the ROFR is tied to the ownership of the Purchased Property and we must look at extrinsic evidence. Although the ROFR was signed at the time Canyon Cove and the Mulberrys closed on their purchase and sale agreement, the ROFR was set forth in a separate agreement titled "Undivided Right of First Refusal to Acquire Interest in Real Property" and was recorded in the county records against the ROFR Property (there was a legal description of the ROFR Property). Unchallenged, was an affidavit from Kirk Burns, the president of Burns Concrete, explaining that the Purchased Property sits between two other parcels owned by Burns Concrete (one 50 acres and one 35 acres) on the south side of 81st South Road. The ROFR Property is on the north side of 81st South Road and to the west of the Purchased Property (it is located across from Burns' 50 acre parcel that is not at issue in this case). Burns explained that the Purchased Property and the ROFR Property do not share irrigation systems, utilities, ingress or egress, or any easements. Given these undisputed and unchallenged facts, it was error for the district court to apply the rule in Section 4.5(2) which provides that in cases of doubt a servitude benefit should be construed to be appurtenant.

I agree with the Court that the ROFR was not extinguished when Canyon Cove attempted to assign it to Burns Concrete for the same reasons articulated by the Court.

14