IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-0134

_____

FILED
November 12, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

McELROY COAL COMPANY, a Corporation,
TERRY L. DOBBS and CATHERINE A. DOBBS,
Defendants Below, Petitioners

v.

GARY R. DOBBS,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Marshall County
The Honorable Jeffrey D. Cramer, Judge
Civil Action No. 09-C-20-K

AFFIRMED

_____

AND

_____

No. 18-0135

_____

TERRY L. DOBBS and CATHERINE A. DOBBS,
Defendants Below, Petitioners

v.

GARY R. DOBBS,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Marshall County
The Honorable Jeffrey D. Cramer, Judge
Civil Action No. 09-C-20-K

AFFIRMED

_____

Submitted: September 4, 2019
Filed: November 12, 2020

Ancil G. Ramey, Esq.
Stacey Richards-Minigh, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia

William D. Wilmoth, Esq.
Steptoe & Johnson PLLC
Wheeling, West Virginia
Counsel for Petitioner McElroy Coal
Company

H. Brann Altmeyer, Esq.
Phillips, Gardill, Kaiser & Altmeyer
PLLC
Wheeling, West Virginia
Counsel for Petitioner McElroy Coal
Company

Eric M. Gordon, Esq.
Berry, Kessler, Crutchfield, Taylor &
Gordon
Moundsville, West Virginia
Counsel for Petitioners Terry L. Dobbs
and Catherine A. Dobbs

Robert P. Fitzsimmons, Esq.
Robert J. Fitzsimmons, Esq.
Fitzsimmons Law Firm PLLC
Wheeling, West Virginia
Counsel for Respondent Gary R. Dobbs

Michael J. Burkey, Esq.
Linda Burkey, Esq.
Burkey & Burkey
Cameron, West Virginia

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "Whether an easement is appurtenant or in gross is to be determined by the intent of the parties as gathered from the language employed, considered in the light of surrounding circumstances." Syl. Pt. 2, *Post v. Bailey*, 110 W. Va. 504, 159 S.E. 524 (1931).

**Armstead, Chief Justice:**

In 1975, Lyle Dobbs died, and land he owned in Marshall County, West Virginia, passed to his wife and two sons, Petitioner Terry L. Dobbs and Respondent Gary R. Dobbs. The wife and sons conveyed a small parcel to the sons for the site of a slaughterhouse business. The remaining land, a home place and a pasture, was conveyed to one son, Terry Dobbs, and his wife, Petitioner Catherine A. Dobbs. The other son, Gary Dobbs, reserved the right to buy back the pasture land if Terry Dobbs died or if Terry and Catherine Dobbs decided to sell, assign, or otherwise dispose of the pasture land. In time, the brothers had a disagreement, and Gary Dobbs purchased the slaughterhouse property at auction. He later sold the slaughterhouse property.

Decades later, Terry and Catherine Dobbs entered into an option agreement with Petitioner McElroy Coal Company ("McElroy Coal") to either sell the pasture land or provide McElroy Coal a waiver of liability for McElroy Coal's mining operations. McElroy Coal chose a waiver and paid Terry and Catherine Dobbs more than $1.5 million for such waiver. When Gary Dobbs learned of this, he sued McElroy Coal and Terry and Catherine Dobbs in the Circuit Court of Marshall County. After discovery, the circuit court granted partial summary judgment, finding (a) that Gary Dobbs retained his right to purchase the pasture land and (b) that Terry and Catherine Dobbs triggered that right to purchase when they signed the McElroy Coal option agreement. McElroy Coal and Terry and Catherine Dobbs appealed.

1

Based on the record before us, the arguments of the parties, and the applicable law, we find that the circuit court's rulings were correct; therefore, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute begins with a 37-acre tract of land in Marshall County, West Virginia. Hannah Gorby acquired this tract in 1905. When her heirs sold it in August 1956, they reserved the minerals and the right to use the surface for mining activities. The heirs sold the mineral rights in 1960, and McElroy Coal eventually acquired some or all of them.

The surface estate (the "Gorby Surface Tract") passed to Lyle Dobbs, father of Terry and Gary Dobbs, in September 1956. In 1971, Lyle Dobbs and his wife sold 1.74 acres and kept the remaining 35.26 acres. Lyle Dobbs also owned an adjacent 60-acre tract where the family home was located (the "Home Place Tract").

Lyle Dobbs died in 1975, and his land passed to his widow, Pauline Dobbs, and his two sons by intestate succession. Pauline Dobbs and the sons disposed of the land in two deeds. The first deed, *which was signed[1] in April and May 1976*, conveyed a 1.150-acre portion of the Gorby Surface Tract to Terry and Gary Dobbs. This 1.150-acre tract (the "Slaughterhouse Tract") was separated off so the sons could operate a slaughterhouse business on it, and the deed conveyed an easement for the sons and their "heirs and assigns"

---

[1] Throughout this opinion, we assume that the grantors of the relevant instruments signed those instruments on the same day they acknowledged their signatures before a notary.

to use the remaining 34.11 acres of the Gorby Surface Tract (the "Pasture Tract") for water[2] and for the disposal of blood and manure.

The second deed, *which was signed in June 1976*, conveyed the Home Place Tract and the Pasture Tract to Terry and Catherine Dobbs subject to the water and waste-disposal easements contained in the Slaughterhouse Tract deed. The reported consideration was $11,254.67. *On the same day the second deed was signed*, Terry and Catherine Dobbs and Gary Dobbs also signed an option agreement (the "1976 Option Agreement"), by which Gary Dobbs reserved the right to buy back the Pasture Tract for $4,000. Each of these instruments was recorded.

The 1976 Option Agreement is at the center of this case. It begins by reciting several matters: *first*, that Gary Dobbs and his wife, Jan Dobbs, conveyed the Pasture Tract to Terry and Catherine Dobbs; *second*, that Gary and Terry Dobbs were entering into a slaughterhouse business; and, *third*, that the Pasture Tract was subject to water and waste-disposal easements for the benefit of the slaughterhouse business. The 1976 Option Agreement further provides as follows:

> NOW THEREFORE, in order that there may be continuity in the conduct of said business and that the heretofore described tract or parcel of land [the Pasture Tract] may be available for the use of said business, it being contiguous thereto and said 1.150 acre tract [the Slaughterhouse Tract] having been a part thereof and also in consideration of the sum of One Dollar ($1.00) paid by the said Gary R. Dobbs to the said first parties [Terry and Catherine Dobbs] . . . *and in the further consideration of the conveyance by the said Gary R. Dobbs of his undivided interest in the*

---

[2] The easement granted use of a spring and a pipeline right-of-way.

3

*aforesaid described tract or parcel of land* [the Pasture Tract] *to said parties of the first part* [Terry and Catherine Dobbs], it is *therefore*,

AGREED, that in the event of the death of said Terry L. Dobbs, or in the event the said Terry L. Dobbs and Catherine A. Dobbs[] decide to sell, assign or otherwise dispose of the aforesaid described tract or parcel of land [the Pasture Tract], that the said *Gary R. Dobbs, his heirs, devisees or assigns shall have the option to purchase said tract or parcel of land, for the full consideration of Four Thousand Dollars ($4,000.00).*

(Emphasis added.)

The 1976 Option Agreement goes on to provide for notice in the event of a determination by Terry and Catherine Dobbs "to sell, assign, or otherwise dispose of" the Pasture Tract and to describe how "Gary R. Dobbs, his heirs, devisees, or assigns" must go about exercising the option.

Terry and Gary Dobbs operated the slaughterhouse business as a partnership. Then conflict arose, and Terry and Catherine Dobbs sued Gary and Jan Dobbs in 1979 to wind up the business. The circuit court deemed the Slaughterhouse Tract and various items of personal property to be partnership assets and ordered them to be sold at public auction. As the successful bidder, Gary Dobbs paid $47,500 for them. These proceeds were divided equally between the parties after payment of certain debts and subject to certain deductions as reimbursement between the parties. Gary Dobbs's deed for the Slaughterhouse Tract conveyed the water and waste disposal easements but said nothing about the 1976 Option Agreement. It did, however, recite that it conveyed "all of the interests of Gary R. Dobbs

4

and Terry L. Dobbs . . . together with the improvements and appurtenances thereunto belonging[.]"[3]

Gary Dobbs sold the Slaughterhouse Tract in 1996. The deed conveyed the water and waste disposal easements that benefit the Slaughterhouse Tract but reserved "a right of ingress, egress and regress for the grantor [Gary Dobbs], his heirs and assigns, over the existing gravel road way running from Cameron Ridge Road, in front of the slaughter house structure, to the property, abutting this 1.150 acres, owned by Terry L. Dobbs." The deed said nothing about the 1976 Option Agreement. It did, however, convey "all of their[4] right, title and interest in and to" the Slaughterhouse Tract. After that, the Slaughterhouse Tract passed through other owners until McElroy Coal acquired it in 2008.

McElroy Coal also set its sights on Terry Dobbs's property. In August 2007, Terry and Catherine Dobbs signed a 90-day option agreement with McElroy Coal (the "2007 Option Agreement"). This agreement (which was later extended) gave McElroy Coal "the exclusive right or option to purchase" the Home Place Tract and the Pasture Tract. It provided that it would become "a legal and binding contract of purchase and sale" at McElroy Coal's option. It also contained the following language:

> DUE DILIGENCE AND CLOSING: . . . During the Option period, Optionee [McElroy Coal] shall advise Optionors [Terry and Catherine Dobbs] of any liens, encumbrances or deficiencies that the title examination discloses, which in the opinion of Optionee [McElroy Coal]

---

[3] In their 1979 lawsuit, Terry and Catherine Dobbs also challenged the 1976 Option Agreement. The circuit court upheld the agreement, finding that Terry and Catherine Dobbs understood and read what they signed.

[4] Gary Dobbs's wife, Jan Dobbs, was also listed as a grantor.

must be removed, and within sixty (60) days after receipt of notice of such liens, encumbrances or deficiencies, Optionor [Terry and Catherine Dobbs] shall clear said title matters to the satisfaction of Optionee [McElroy Coal] or Optionee [McElroy Coal] may refuse, without liability, to complete the purchase of the optioned premises. In the event of any such title deficiencies, the period for closing shall be extended as necessary to accommodate Optionor's [Terry and Catherine Dobbs's] cure of any title defect. Thereupon Optionor [Terry and Catherine Dobbs] shall convey, or cause to be conveyed, good and marketable title to the Option Property above described or designated [the Home Place Tract and the Pasture Tract], to Optionee [McElroy Coal], or Optionee's [McElroy Coal's] nominees, designated affiliate, successors or assigns, by deed of general warranty, in form acceptable to Optionee [McElroy Coal], in its unlimited discretion; provided, however, that in the event instruments of record as to the above-referenced 34-acre Parcel [the Pasture Tract] preclude Optionors [Terry and Catherine Dobbs] from conveying title to Optionee [McElroy Coal], in Optionee's [McElroy Coal's] reasonable judgment, Optionor [Terry and Catherine Dobbs] may satisfy its [their] conveyance obligations regarding said Parcel by delivering to Optionee [McElroy Coal] a waiver of liability associated with Optionee's [McElroy Coal's] mining operations, in form and content satisfactory to Optionee [McElroy Coal]. . . .

McElroy exercised its option and selected the waiver, and on February 15, 2008, Terry and Catherine Dobbs signed a waiver, release and easement and other documents waiving McElroy Coal's liability for mining operations conducted on or under the Pasture Tract. For this waiver and grant of other rights pertaining to the Pasture Tract, Terry and Catherine Dobbs received more than $1.5 million. They did not, however, convey title to the Pasture Tract.

The waiver, release and easement acknowledges the 1976 Option Agreement and contains the following provisions:

6

Among other matters, the [1976 Option] Agreement purports to create a right in Gary R. Dobbs to purchase the property [Pasture Tract] upon the death of Terry L. Dobbs, or the decision of Releasors [Terry and Catherine Dobbs] to "sell, assign or otherwise dispose" of the property [Pasture Tract]. Releasors [Terry and Catherine Dobbs] warrant and represent that it is their understanding that the intention of said document was to create a right appurtenant to the 1.15 acre tract of ground conveyed by Releasors [Terry and Catherine Dobbs] to Gary R. Dobbs, and subsequently conveyed by Gary R. Dobbs to others. It is the good faith belief of Releasors [Terry and Catherine Dobbs] that Gary R. Dobbs has no further right to purchase the subject land.

In the waiver, release and easement, Terry and Catherine Dobbs further bound themselves, "when asked, to testify, under oath to the above understanding" and "to cooperate with Releasee [McElroy Coal] in the defense of any claim which might be asserted by Gary R. Dobbs, or his assigns, arising out of or related to said April 23, 1976 [Option] Agreement."

There is no indication that Terry or Catherine Dobbs ever notified Gary Dobbs regarding these transactions. At some point, however, Gary Dobbs became aware of Terry and Catherine Dobbs's dealings with McElroy Coal. He filed suit against McElroy Coal and Terry and Catherine Dobbs on February 13, 2009, alleging that they breached, tortiously interfered with, and conspired to evade the 1976 Option Agreement. His complaint also contends that petitioners slandered his title and wrongfully possessed the Pasture Tract.[5]

---

[5] Gary Dobbs further claimed that he owned a share of the coal under the Pasture Tract. The circuit court rejected this claim (and his related causes of action). Gary Dobbs filed a notice of appeal, but he later withdrew his appeal.

7

After discovery, Gary Dobbs and McElroy Coal filed summary judgment motions.[6] The circuit court determined that Gary Dobbs's right to purchase the Pasture Tract was assignable but not appurtenant to the Slaughterhouse Tract and that this right remained with Gary Dobbs after he sold the Slaughterhouse Tract. The circuit court also found that Terry and Catherine Dobbs "triggered" Gary Dobbs's right to purchase when they signed the 2007 Option Agreement and that they breached the 1976 Option Agreement when they failed to notify Gary Dobbs of their decision to sell, assign, or otherwise dispose of the Pasture Tract.

The circuit court's January 18, 2018 order, which contains these findings, states that it is final and appealable with respect to all issues on which the court granted summary judgment.[7] McElroy Coal and Terry and Catherine Dobbs appealed separately, and we consolidated their appeals.

---

[6] Gary Dobbs asked for partial summary judgment.

[7] *See* W. Va. R. Civ. P. 54(b) [1998]. The circuit court denied McElroy Coal's motion for summary judgment on Gary Dobbs's tortious interference, conspiracy, and wrongful possession claims and, based on the order, does not appear to have ruled expressly either way on Gary Dobbs's slander of title claim to the extent that it pertains to the surface of the Pasture Tract. On appeal, McElroy Coal assigns error to the circuit court's refusal to grant summary judgment on these claims. However, these assignments of error are not ripe for review, and we decline to consider them. Syl. Pt. 7, *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 829 S.E.2d 35 (2019) (" 'An order denying a motion for summary judgment is merely interlocutory, leaves the case pending for trial, and is not appealable except in special instances in which an interlocutory order is appealable.' Syllabus Point 8, *Aetna Casualty and Surety Company v. Federal Insurance Company of New York,* 148 W. Va. 160, 133 S.E.2d 770 (1963).").

## II. STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). The same standard of review applies when we review a circuit court's interpretation of a contract. *Wood v. Acordia of W. Va., Inc.*, 217 W. Va. 406, 411, 618 S.E.2d 415, 420 (2005). With this standard of review in mind, we will consider petitioners' arguments.

## III. ANALYSIS

McElroy Coal contends that Gary Dobbs's right to purchase[8] the Pasture Tract was appurtenant to the Slaughterhouse Tract and passed with the Slaughterhouse tract when Gary Dobbs sold it. Terry and Catherine Dobbs agree and advance the same argument. McElroy Coal further contends that, even if Gary Dobbs retained this right to purchase the Pasture Tract, this right was not triggered when Terry and Catherine Dobbs signed the 2007 Option Agreement. We will address each argument in turn.

### A. Whether the Right to Purchase Was in Gross or Appurtenant

The right to purchase created by the 1976 Option Agreement is a "servitude," which is "a *right* or an *obligation* that runs with land or an interest in land." Restatement (Third) of Property (Servitudes) § 1.1(1) (2000) (emphasis added). A "right or obligation" runs with land when it "passes automatically to successive owners or occupiers of the land

---

[8] We refer to the right conferred by the 1976 Option Agreement as a "right to purchase" because it is, strictly speaking, neither an option nor a right of first refusal. Like a right of first refusal, the right to purchase does not accrue until there is a decision to sell. Yet, like an option, the right to purchase is at a previously specified price, not at the price then offered by a third party.

or the interest in land with which the right or obligation runs." Restatement (Third) of Property (Servitudes) § 1.1(1)(a) (2000). In this case, no one denies that Terry and Catherine Dobbs's obligation to sell the Pasture Tract (upon the terms and conditions stated in the 1976 Option Agreement) runs with the Pasture Tract.[9] Indeed, without ownership of the subject property, one could not fulfill the obligation to sell it to Gary Dobbs under the terms of the 1976 Option Agreement. The question is whether Gary Dobbs's right to purchase runs with the Slaughterhouse Tract.

A right conveyed by a servitude can exist in several forms. A right is "appurtenant" if it is "tied to ownership or occupancy of a particular unit or parcel of land." Restatement (Third) of Property (Servitudes) § 1.5(1) (2000). It is "in gross" when the opposite is true—when exercise of the right "is *not tied* to ownership or occupancy of a particular unit or parcel of land." Restatement (Third) of Property (Servitudes) § 1.5(2) (2000) (emphasis added). An "appurtenant" right and a right "in gross" may be either transferrable or non-transferrable. Restatement (Third) of Property (Servitudes) § 1.5 cmt. (a) and (b) (2000). A right that "is not transferable and does not run with land" is considered "personal." Restatement (Third) of Property (Servitudes) § 1.5(3) (2000).

"Whether an easement is appurtenant or in gross is to be determined by the intent of the parties as gathered from the language employed, considered in the light of

---

[9] Terry and Catherine Dobbs received the Pasture Tract as joint tenants with right of survivorship, and, according to the 1976 Option Agreement, upon Terry Dobbs's death, Catherine Dobbs (if she survived him) or their "heirs or devisees, or executor" were obliged to honor the right to purchase.

surrounding circumstances." Syl. Pt. 2, *Post v. Bailey*, 110 W. Va. 504, 159 S.E. 524 (1931). We view the holding in *Post* to be applicable to other servitudes as well, such as the right to purchase at issue here. In this case, the circuit court carefully examined the 1976 Option agreement and the circumstances of its formation and found that the right to purchase was in gross and transferrable.

In support of this conclusion, the circuit court offered, among other things, the following reasons: *first*, the 1976 Option Agreement does not provide that the right to purchase is appurtenant to the Slaughterhouse Tract; *second*, the words "shall run with the land" or "shall run with said property"—though not essential to create a covenant that runs with land—would have clearly demonstrated the parties' intent to create an appurtenant right, yet these words are absent; *third*, the right to purchase was granted to Gary Dobbs by name, not to the "owner" of the Slaughterhouse Tract; *fourth*, the words "heirs, devisees, or assigns" fall short of an express intent to render the right to purchase appurtenant to the Slaughterhouse Tract and reflect nothing more than an agreement that the right to purchase be assignable; *fifth*, the overall structure of the Dobbs family's transactions in the spring of 1976, including the creation of a right to purchase in an agreement that is separate and apart from the Slaughterhouse Tract and Pasture Tract deeds, reveals an intent that the right to purchase not be appurtenant to the Slaughterhouse Tract;[10] *sixth*, because the 1976

---

[10] To the extent that the deeds to the Slaughterhouse Tract and the Pasture Tract deed may constitute extrinsic evidence, we find that the circuit court did not err in considering them. First, their contents are undisputed. *See* Syl. Pt. 7, *Mylius v. Raine-*

(continued . . .)

11

transactions occurred within a period of thirty days,[11] if the parties had intended to make the right to purchase appurtenant to the Slaughterhouse Tract, they could have included such language in the deed for that property; and *seventh*, ownership of the Pasture Tract provided no apparent benefit to the owner of the slaughterhouse business, because the right to obtain water from, and spread waste on, the Pasture Tract ran with the Slaughterhouse Tract.[12]

---

*Andrew Lumber Co.*, 69 W. Va. 346, 71 S.E. 404 (1911) ("The construction of a deed, not dependent in any way upon extrinsic evidence, and also of a deed dependent upon extrinsic evidence, when the facts are undisputed, is a question for the court and not for the jury."). Second, the 1976 Option Agreement, the Slaughterhouse Tract deed, and the Pasture Tract deed are clearly related and share the same general subject matter and (in most cases) the same parties. *See* Syl. Pt. 3, in part, *TD Auto Fin. LLC v. Reynolds*, ___ W. Va. ___, 842 S.E.2d 783 (2020) ("Separate written instruments will be construed together and considered to constitute one transaction where the parties and the subject matter are the same, and where there is clearly a relationship between the documents." (internal quotation marks and citations omitted)).

[11] "Thirty days" likely refers to the fact that four out of five grantors signed the Slaughterhouse Tract deed on May 12, 1976, or May 14, 1976, and all grantors signed the Pasture Tract Deed and the 1976 Option Agreement on June 12, 1976. Because the first grantor who signed the Slaughterhouse Tract deed signed it on April 30, 1976, the actual window of time is closer to a month-and-a-half, but the circuit court's point is well-taken.

[12] Based on deposition testimony, the circuit court also determined that the "overriding purpose" of the right to purchase was to keep the Pasture Tract in Gary Dobbs's family. Petitioners contend that this finding contradicts the 1976 Option Agreement's stated purpose of ensuring "continuity in the conduct of said business" and of keeping the Pasture Tract "available for the use of said business[.]" We disagree with this characterization of the agreement. The 1976 Option Agreement identifies the slaughterhouse business with *Terry and Gary Dobbs* and references the parties' intent to ensure continuity and availability with respect to *that business*, not the Slaughterhouse Tract. More importantly, the same paragraph that expresses that purpose goes on to invoke Gary Dobbs's conveyance of his interest in the Pasture Tract and states that *this conveyance* provided the consideration for Gary Dobbs's right to recover the Pasture Tract. "An

(continued . . .)

We find these reasons persuasive, and we agree that the right to purchase that Gary Dobbs received in the 1976 Option Agreement was in gross and transferrable. We find this conclusion particularly compelling in light of the following facts: (a) the parties, who could have done otherwise, chose to place the right to purchase in a separate agreement and not in one (or both) of the deeds; (b) Gary Dobbs's conveyance of his interest in the Pasture Tract was the express consideration for his right to recover the Pasture Tract; and (c) all of these transactions occurred between family members and in relation to property originally belonging to Lyle Dobbs. Indeed, to reach a contrary conclusion—that Gary Dobbs's right to purchase was appurtenant to the Slaughterhouse Tract—would require us to believe that the parties intended to allow the right to purchase to leave the family if Gary Dobbs sold his one-half interest in the Slaughterhouse Tract.[13]

---

elementary rule of construction, applicable to every kind of written instruments, is that all parts of the instrument under consideration shall be considered[.]" *Diamond v. Parkersburg-Aetna Corp.*, 146 W. Va. 543, 553, 122 S.E.2d 436, 443 (1961) (quoting *State v. Harden*, 62 W. Va. 313, 321, 58 S.E. 715, 718 (1907), *disapproved of on other grounds by Wiseman v. Calvert*, 134 W. Va. 303, 59 S.E.2d 445 (1950)). If we must consider all parts of an agreement, then surely we must consider all parts of the same paragraph. Moreover, we cannot ignore the fact that, in this case, the agreement in question was just one part in a series of agreements between family members. For these reasons, we find that the circuit court's finding of purpose agreed with the 1976 Option Agreement's express language, especially when that agreement is considered in context.

[13] We also note that the Pasture Tract deed to Terry and Catherine Dobbs lists both Gary and Jan Dobbs as grantors, yet the 1976 Option Agreement invokes only Gary Dobbs's conveyance as consideration for the right to purchase. Similarly, when Gary Dobbs received title to the Slaughterhouse Tract, he was the only person listed as a grantee. Nevertheless, when he sold the Slaughterhouse Tract, both Gary and Jan Dobbs were listed as grantors. These facts further bolster our conclusion that the right to purchase belonged to Gary Dobbs in gross.

McElroy Coal contends, however, that the words "heirs, devisees or assigns" show that the right to purchase conveyed by the 1976 Option Agreement was appurtenant to the Slaughterhouse Tract. We disagree.

It is true that we have held that "[a]n easement will not be presumed to be in gross when it can fairly be construed to be appurtenant." *Post*, 110 W. Va. at 504, 159 S.E. at 524, syl. pt. 3. However, a different presumption arises when the servitude in question involves a right of first refusal.[14] "Rights of first refusal are presumed to be personal, and are thus not assignable unless either the clause granting the right refers to successors or assigns or the instrument clearly shows that the right was intended to be assignable." 6A C.J.S. Assignments § 36; *see also Mulberry v. Burns Concrete, Inc.*, 164 Idaho 729, 732, 435 P.3d 509, 512 (2019) (noting that "the majority of case law . . . holds that [rights of first refusal] are presumptively personal to the parties when the [right of first refusal] does not contain language such as 'assigns' or 'heirs.' "). Thus, when a court confronts an easement servitude, it begins by assuming that the benefit of the easement is appurtenant. By contrast, when a court confronts a right-of-first-refusal servitude, the court begins by assuming that the benefit is personal—i.e., that it "is not transferable and *does not run with land*." Restatement (Third) of Property (Servitudes) § 1.5(3) (2000) (emphasis added).[15]

_____

[14] As noted above, the right to purchase has features of both an option and a right of first refusal. We find that, for purposes of this analysis, the right-of-first-refusal features are most relevant.

[15] As the above authorities indicate, when "the clause granting the right refers to successors or assigns or the instrument clearly shows that the right was intended to be

(continued . . .)

McElroy Coal contends, nevertheless, that the circuit court's ruling conflicts with our decision in *Cottrill v. Ranson*, 200 W. Va. 691, 490 S.E.2d 778 (1997). We disagree. In *Cottrill*, we were asked to construe a statute that provided a right to repurchase property previously sold to a board of education. *Id*. at 694, 490 S.E.2d at 781. According to the statute, the right to purchase lay with the grantor of the lands, his heirs or assigns, and one of the original grantors claimed that this right to repurchase remained with him despite the fact that he had sold the parent tract many years before the board of education decided to dispose of the property. *Id*. We rejected the grantor's claim as a matter of statutory construction, not as a matter of generally applicable property law:

> In deciding this issue, we adhere to the view previously expressed by this Court that one of the underlying purposes of West Virginia Code § 18–5–7 is to assure rural property owners that, if they convey a portion of their land to be used for school purposes and if school operations on the property later cease, the original grantor of the school property, his heirs or assigns, may repurchase the school property to prevent it from passing into the hands of a stranger and, thereby, protect the parent tract from being damaged. In order to accomplish this purpose, we conclude whatever right the original grantor has to repurchase the school property will pass from the original grantor to that grantor's heirs or assigns of the parent tract so that such heirs or assigns may repurchase the school

assignable[,]" the right may be assigned. 6A C.J.S. Assignments § 36. Such language plainly appears in the 1976 Option Agreement, given its repeated references to Gary's "heirs, devisees, or assigns"; therefore, the circuit court correctly determined that the right to purchase was assignable. The right of assignability, however, does not translate to the conclusion that the right automatically runs with the land merely because the language of assignment appears in the instrument that creates the right. This is particularly true when—as in this case—the language of the instrument shows that it was intended to create an assignable right in gross. Thus, we remain convinced that the right to purchase conveyed by the 1976 Option Agreement was transferrable and in gross.

property and protect the parent tract which they own by virtue of the conveyance from the original grantor.

*Id*. at 696–97, 490 S.E.2d at 783–84.  We refuse McElroy Coal's attempt to give *Cottrill* a meaning and significance that it does not have.

## B.  Whether the 2007 Option Agreement Triggered the Right to Purchase

Because Gary Dobbs's right to purchase the Pasture Tract was in gross, and because there is no indication that he ever transferred this right to a third party,[16] the question becomes whether Terry and Catherine Dobbs "*decide*[*d*] to sell, assign or otherwise dispose of" the Pasture Tract when they signed the 2007 Option Agreement. (Emphasis added.)  We find that they did.

By its express terms, the 2007 Option Agreement gave McElroy Coal the "right or option to purchase" the Pasture Tract, and this option became "a legal and binding contract of purchase and sale" at McElroy Coal's option.  Such language manifests a concrete *decision* to sell the Pasture Tract.

McElroy Coal responds that an option is neither a sale nor an agreement to sell.  Syl. Pt. 3, in part, *Am. Canadian Expeditions, Ltd. v. Gauley River Corp.*, 221 W. Va. 442, 655 S.E.2d 188 (2007) (" 'An option given for the sale of land . . . is not a sale of real estate, nor an agreement to sell, but is an executed contract, giving the optionee the exclusive privilege of purchasing within the time limited . . . .' Syl. Pt. 2. *Pollock v.*

_____

[16] Because the right to purchase was not appurtenant to the Slaughterhouse Tract, we reject any assertion that Gary Dobbs transferred this right when he sold the Slaughterhouse Tract.

16

*Brookover,* 60 W.Va. 75, 53 S.E. 795 (1906).").  The question, however, is not whether the 2007 Option Agreement is an *agreement* to sell the Pasture Tract; again, it is whether signing the 2007 Option Agreement manifested a *decision* to sell.  We find that it did constitute such a decision to sell.

Undeterred, McElroy Coal contends that there was no decision to sell, because Terry and Catherine Dobbs "simply provided McElroy [Coal] with an option to either purchase the Pasture Tract or to enter into a waiver of liability."  This argument ignores the 2007 Option Agreement's plain language:

> DUE DILIGENCE AND CLOSING: . . . During the Option period, Optionee [McElroy Coal] shall advise Optionors [Terry and Catherine Dobbs] of any liens, encumbrances or deficiencies that the title examination discloses, which in the opinion of Optionee [McElroy Coal] must be removed, and within sixty (60) days after receipt of notice of such liens, encumbrances or deficiencies, Optionor [Terry and Catherine Dobbs] shall clear said title matters to the satisfaction of Optionee [McElroy Coal] or Optionee [McElroy Coal] may refuse, without liability, to complete the purchase of the optioned premises.  In the event of any such title deficiencies, the period for closing shall be extended as necessary to accommodate Optionor's [Terry and Catherine Dobbs's] cure of any title defect. *Thereupon Optionor [Terry and Catherine Dobbs] shall convey, or cause to be conveyed, good and marketable title to the Option Property above described or designated [the Home Place Tract and the Pasture Tract], to Optionee [McElroy Coal],* or Optionee's [McElroy Coal's] nominees, designated affiliate, successors or assigns*, by deed of general warranty, in form acceptable to Optionee [McElroy Coal], in its unlimited discretion*; provided, however, that in the event instruments of record as to the above-referenced 34-acre Parcel [the Pasture Tract] preclude Optionors [Terry and Catherine Dobbs] from conveying title to Optionee [McElroy Coal], *in Optionee's [McElroy Coal's] reasonable judgment, Optionor [Terry and Catherine Dobbs]*

17

*may satisfy its [their] conveyance obligations regarding said Parcel by delivering to Optionee [McElroy Coal] a waiver of liability associated with Optionee's [McElroy Coal's] mining operations, in form and content satisfactory to Optionee [McElroy Coal]. . . .*

(Emphasis added.) Thus, the decision as to whether to transfer the property by deed or to give a waiver of liability was not up to Terry and Catherine Dobbs once they signed the 2007 Option Agreement. As the circuit court correctly determined, whether they gave a deed or a waiver of liability was strictly a matter for McElroy Coal's "reasonable judgment"; if McElroy Coal demanded a deed for the Pasture Tract, Terry and Catherine Dobbs were legally obligated to give one. When Terry and Catherine Dobbs signed the 2007 Option Agreement, they bound themselves to these terms, and no one can plausibly deny that these terms reflect a *decision* on their part to sell the Pasture Tract. A *decision*[17] "to sell, assign or otherwise dispose of" the Pasture Tract was sufficient to trigger Gary Dobbs's right to purchase under the 1976 Option Agreement; therefore, the circuit court did not err in granting summary judgment for Gary Dobbs on this issue.

## IV. CONCLUSION

Based on the foregoing, we affirm the decision of the Circuit Court of Marshall County finding (a) that Gary Dobbs retained his right to purchase the Pasture

---

[17] The 1976 Option Agreement also refers to a "determin[ation] to sell, assign or otherwise dispose of" the Pasture Tract. We believe that, in the context of the 1976 Option Agreement, there is no difference between deciding to sell the Pasture Tract and determining to sell it.

18

Tract under the 1976 Option Agreement and (b) that Terry and Catherine Dobbs triggered his right to purchase when they signed the 2007 Option Agreement.

Affirmed.